280

5-1385                                        307 S. W. 2d 77

Opinion delivered November 25, 1957.

*John F. Gibson* and *Robert B. Gibson,* for appellant.

*S. Paul Johnson, Crumpler & O'Connor,* and *Wright, Harrison, Lindsey & Upton,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellants, Elmer Curry and Emma Jean Curry, on September 30, 1949, entered into an agreement with appellees to purchase the corporate stock (acquiring 30 shares from Curtis Bennett, 16 shares from A. D. Hanna and 582 shares from appellee W. H. Hanna) of three furniture stores for a consideration of $216,400.00, located in El Dorado, Smackover and Camden, Arkansas. After making a substantial down payment notes were executed by appellants for the balance of the purchase price requiring monthly payments of $2,750 on the principal. The stock was transferred to the purchasers (appellants) but was to be held in escrow by a trustee as security for the balance due on the purchase price. The Elmer Curry Furniture Company, Inc., was then formed and subsequent thereto the corporate name changed to Hanna Furniture Company, Inc.

On March 24, 1953, Hanna claimed a default on the notes, insolvency of Elmer Curry, and filed suit in the

Union Chancery Court asking for foreclosure and appointment of a receiver to protect the assets. Following the bringing of this foreclosure suit, a settlement was consummated on March 31, 1953, under the terms of which the Currys transferred to W. H. Hanna the 628 shares of stock (626 of which were pledged) and Curry's debt to Hanna of some $92,300 was cancelled. Appellant, Elmer Curry, on July 27, 1953, on his own petition, in which he alleged that he was proceeding under Section 70 of the Bankruptcy Laws, 11-U.S.C.A. 110, was adjudicated a voluntary bankrupt, listing debts of $17,074.10. Thereafter, September 10, 1953, the trustee, Johnson, for the bankrupt Curry, filed suit in the U.S. District Court against W. H. Hanna and Hanna Furniture Company, Inc., (the same defendants as these appellees here) seeking to set aside the agreement and transfer of stock, pursuant to the agreement of March 31, 1953, and seeking to have the trustee take over all the property and assets of the Hanna Furniture Company, Inc., (being the same assets and property referred to in the present litigation.) In this federal court action it was also alleged that these appellants (Currys) had acted unwillingly, under duress and threats, etc., on the part of W. H. Hanna, his agents and attorneys (the same allegations in effect as in the present suit). Curry filed a motion to intervene in this federal court suit and appellees answered with a general denial. Appellees made an offer of settlement, in the federal court, to which appellants objected. The federal court ordered the parties to accept the offer of settlement, which in effect provided payment of the claims of the prior and unsecured creditors, fees and expenses, and statutory allowances.

On January 3, 1956, after the accepted order had been complied with, the federal court d i s m i s s e d *with prejudice* the suit of the trustee, Johnson, for the Estate of Elmer Doyle Curry Bankrupt vs. Hanna Furniture Co., Inc., and Elmer Curry Furniture Co., Inc., and W. H. Hanna. Thereafter on January 31, 1956, appellants (Currys) filed the present suit and in their complaint and an amendment thereto, alleged that the above agreement

of March 31, 1953, was void and should be cancelled for the reason that the signatures thereto of the Currys' were secured "under force, compulsion, threats and unconscionable advantage taken by W. H. Hanna, his agents and attorneys."

On November 15, 1956, following a hearing, the Drew Chancery Court sustained appellees motion to dismiss appellants' complaint on the grounds of *res adjudicata*, and we think correctly so.

For reversal appellants say: "The only question believed to be presented on this appeal is that of *res adjudicata*, as shown by the Chancery Court decree from which this appeal is taken." It appears clear to us that appellants in the present action are seeking to do the same thing which the trustee in bankruptcy sought to do in the federal court suit, that is, in each of these suits it was sought to set aside the agreement of March 31, 1953, and to set aside the transfer of stock provided in that agreement and procure for appellants all the corporate stock, assets and property. The relief sought in both suits was the same and the issues appear to be the same in each suit.

The doctrine of *res adjudicata* was stated in the case of *Watson* v. *Suddoth*, 218 Ark. 960, 239 S. W. 2d 602, in this language: "Briefly stated, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." See also *Missouri Pacific RR Co., Thompson, Trustee* v. *McGuire*, 205 Ark. 658, 169 S. W. 2d 872. "The doctrine of *res adjudicata* (or *res judicata*) in the strict sense of that time-honored Latin phrase had its origin in the principle that it is in the public interest that there should be an end of litigation and that no one should be twice sued for the same cause of action." *First Nat'l. Bank* v. *U.S.F. & G. Co.*, 207 S. C. 15, 35 S. E. 2d 47, 162 A. L. R. 1003, 1015.

While it is true that in the federal court suit Curry's trustee, Johnson, appeared as plaintiff, while in the present suit Curry appears personally as plaintiff, he (Johnson) was clearly acting for and on behalf of the Currys, acting as their privy and asserting and claiming for them all of their legal rights. The text writer in 30 Am. Jur. 957, uses this language: "In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right. It has been declared that privity within the meaning of the doctrine of *res judicata* is privity as it exists in relation to the subject matter of the litigation, and that the rule is to be construed strictly to mean parties claiming under the same title. Under this rule, privity denotes mutual or successive relationship to the same right of property, and there is privity within the meaning of the doctrine of *res judicata* where there is an identity of interest and privity in estate, so that a judgment is binding as to a subsequent grantee, transferee, or lienor of property. This is in harmony with the view that a judgment is binding on privies because they are identified in interest, by their mutual or successive relationship to the same rights of property which were involved in the original litigation." See also *Missouri Pacific RR Co. Thompson, Trustee* v. *McGuire supra.* The rule appears to be well established that a "dismissal with prejudice" is equivalent to a final judgment in so far as the application of the doctrine of *res adjudicata* is concerned. "A dismissal of a cause of action with prejudice is a final adjudication on the merits within the rule of *res judicata, Seaboard Finance Co. et al* v. *Wright, Adm'x.,* 223 Ark. 351, 266 S. W. 2d 70.

Under the Bankruptcy Act above, Section 70 (a) (under which appellant Curry alleged in the federal court he was proceeding) it is provided: "Title to Property. a. The Trustee of the estate of bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankruptcy or

of the original petition proposing an arrangement or plan under this Act, except insofar as it is to property which is held to be exempt, to all . . . (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; . . .'' In construing this section in the case of *In re Toms,* 101 F. 2d 617 the court said: ''Under Section 70 a, 11 U.S.C.A. Section 110 (a), the trustee is vested with the title of the bankrupt to all of his possessions and choses in action at the date petition is filed, except that exempt to him under the laws of the State.'' In other words, the trustee in bankruptcy stands in the shoes of the bankrupt and acquires whatever title the bankrupt had which title carries with it the right to possession. See 4 *Collier on Bankruptcy,* p. 943 *et seq.* It also appears to be a well established rule that any rights of action that the bankrupt had based on alleged fraud and duress passed to the trustee in bankruptcy. ''Clause (6) of Section 70 (a) provides that the trustee is vested with title to all rights of action arising from 'the unlawful taking or detention of or injury to' the bankrupt's property. Under this category the Courts have included: Actions for conversion; actions based on fraudulent misrepresentation and deceit through which the bankrupt incurred heavy losses;   *   *   *'' 4 Collier on Bankruptcy, p. 1167.

Since it appears, as indicated, that the Currys are seeking in the present suit the same relief against the defendants (appellees) which the trustee in bankruptcy, Johnson, sought in the federal court action, and on the same allegations in effect alleged in the federal suit, we conclude that the action of the federal court was *res adjudicata* to the present suit and that the decree of the Drew Chancery Court was correct and should be, and is, affirmed.