Gilbert Santos **DAMIAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. A14–88–00940–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 3, 1989.

Discretionary Review Refused
Nov. 22, 1989.

Bill Howell, Manvel, for appellant.

Jim Turner, Angleton, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

A jury found appellant guilty of aggravated assault on a peace officer with a deadly weapon, namely, an ax, and assessed punishment, enhanced by two prior felony convictions, at confinement for twenty-five years in the Texas Department of Corrections. With permission granted to file an out-of-time appeal, appellant brought six points of error, of which numbers four (4) and six (6) where later withdrawn by motion to this court. The remaining four points to be addressed are: (1) the penal code section under which appellant was charged and convicted is unconstitutionally void for vagueness in penalty; (2) insuffi-

cient evidence to sustain the conviction; (3) the court below gave jury instructions outside the presence of appellant and his counsel; and, (5) failure to instruct the jury to find the first prior conviction was final before the second prior offense was committed. We affirm.

Appellant was in his early thirties at the time of the offense. He lived with his parents at their home in Angleton. One February evening in 1986 he asked his father permission to have two friends stay overnight. When the father refused, appellant knocked him down and threatened him with a knife. Police answered a call to the house and observed appellant going into the residence from the front porch where the attack on the father had taken place. The police officer left to handle another call and returned after a brief time to observe appellant approaching two neighbors with a knife in his hand. When appellant saw the police officer coming, he quickly returned to the residence and barricaded himself in his bedroom. Appellant's father went to the police station and filed a misdemeanor complaint. The father had used this process before to obtain mental health care for his son. Police entered the house with consent of the father and attempted without success to extract appellant from his bedroom. The justice of the peace who had issued the arrest warrant arrived. He went to the yard outside the front bedroom window and attempted to talk with appellant. He withdrew when appellant threw a bed slat, breaking the glass.

The police chief arrived when the warrant had been upgraded to a felony arrest. The police chief became the fourth police officer to talk through the door or bedroom window with appellant. Appellant knew most of the Angleton police officers. He knew some of them on a first-name basis. Appellant spoke to them from his room, loudly announcing his intention not to come out and that he intended to cut off the heads of the intruders. The chief of police had his face close to the outside of the bedroom door while trying to coax appellant from the bedroom. Suddenly an ax

blade crashed through the door panel, barely missing the chief's head. Police backed away as the ax blade was again thrust through the door panel accompanied with more angry profanity that appellant was going to cut off the heads of persons standing outside.

The incident lasted approximately three hours. It finally ended when police tossed a tear gas device into the room, forcing appellant to surrender. At least four police cars were at the scene and an ambulance and fire truck stood by. Appellant's bedroom was at the front part of the house with windows facing the street in which these vehicles were assembled.

At a suppression hearing the court found an adequate affidavit upon which the felony arrest warrant was issued, but the warrant itself was defective. The warrant did not name with proper precision the same person identified in the affidavit. The indictment returned by the grand jury was found lawful, however. The motion to suppress weapons was denied because officers had consent of the householder to be at the scene of the alleged offense. The offense, if committed, was the unjustified assault upon the police chief with an ax, not the assault by appellant of his father involving a knife. Therefore, if committed, the charged offense happened in plain view of other officers.

Two psychiatrists testified that appellant was able to confer with counsel and he knew the difference between right and wrong at the time of the offense, but they differed on the nature of appellant's explosive personality. One psychiatrist felt appellant's personality disorder was the result of a learned behavior, aggravated by alcohol and drugs. The other psychiatrist diagnosed paranoid schizophrenia, characterized by a loss of contact with reality.

Appellant took the stand against advice of counsel. He said he remembered none of the events leading up to his arrest except that he had hit the door with the ax. He admitted to having been in mental insti-

tutions on five occasions and that he had been convicted of two prior felonies.

■ Appellant argues in his first point of error that Penal Code section 22.02 violates his due process rights under the constitutions of both Texas and the United States. He objects to the fact that the second degree felony penalty imposed for threatening a peace officer is the same as the penalty imposed for causing bodily injury to a peace officer. He offers rationale for his argument that *threatening* is an inchoate offense, such as *attempt* under Penal Code section 15.01 (for which the penalty is one degree less than for a completed offense). Pertinent parts of TEX.PENAL CODE ANN. § 22.02, **"Aggravated Assault"**, in effect at the time of the offense were as follows (Italics added):

(a) A person commits an offense if the person commits assault as defined in Section 22.01 [1] of this code and the person:

(2) *threatens with a deadly weapon* or *causes bodily injury to a peace officer* or a jailer or guard employed at a municipal or county jail or by the Texas Department of Corrections when the person knows or has been informed the person assaulted is a peace officer, jailer or guard:

(A) while the peace officer, jailer or guard is lawfully discharging an official duty; ...

.   .   .   .   .

(c) An offense under this section is a felony of the third degree, unless the offense is committed under Subdivision (2) of Subsection (a) of this section and the person uses a deadly weapon, in which event the offense is a *felony of the second degree.*

Pertinent parts of TEX.PENAL CODE ANN. § 15.01, **"Criminal Attempt"**, in effect at the time of the offense were as follows (Italics added):

(a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than

---

1. § 22.01 Assault [defined]
   (a) A person commits an offense if the person:

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse;

mere preparation that tends *but fails to effect the commission of the offense intended.*

. . . . .

(d) An offense under this section is *one category lower than the offense attempted,* and if the offense attempted is a felony of the third degree, the offense is a Class A misdemeanor.

Followed to a conclusion, appellant's argument is that *threatening,* under section 22.02, could be classified as *attempted bodily injury to a peace officer* and therefore subject to only a third degree felony penalty under a construction of section 15.01, not second degree as shown in section 22.02 Appellant complains of "vagueness in penalty between two statutes," and that "there exists an irreconcilable conflict in penalty which is unguided by distinguishing elements for each offense."

The construction of Penal Code section 22.02 is neither vague nor ambiguous. Threatening a peace officer with a deadly weapon is a completed offense in itself under section 22.02. All elements of the offense are sufficiently set forth in section 22.02 and may be read with total exclusion from and independence of section 15.01. Also, section 22.02 gives a person of ordinary intelligence fair notice that threatening a peace officer with a deadly weapon is forbidden, and the statute does not encourage arbitrary and erratic arrests and convictions. *See Robinson v. State,* 764 S.W.2d 367, 370 (Tex.App.—Dallas 1989, no writ) [2], quoting *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Adley v. State,* 718 S.W.2d 682, 685 (Tex.Crim.App. 1985). Appellant offers no cohesive or persuasive argument to support a reading or application of section 15.01 instead of or in conjunction with section 22.02. We are not

aware of any precedent or legal theory that will permit an accused to select or construe his offense from the Texas Penal Code as if it were a menu. Appellant conceivably could have been indicted under section 15.01, but he wasn't. Appellant's point of error number one is overruled.

█ In point of error number two, appellant offers a complex allegation of insufficiency of the evidence to sustain conviction because:

(1) the State failed to prove that:

(a) the complainant peace officer was lawfully discharging an official duty: and,

(b) appellant's acts were not necessary to defend against excessive force used to effect an illegal arrest.

(2) evidence is not sufficient to show appellant intentionally and knowingly threatened the complainant with imminent bodily injury (as alleged in the indictment).

Challenges to the sufficiency of the evidence to support a conviction demand that we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim.App.1989) (reconfirming the *Jackson* standard of review).

The apparent elements of the offense at hand are stated above in Penal Code section 22.02: (1) threatening with a deadly weapon; (2) a person who is a peace officer; (3) having knowledge (or having been told) the person assaulted was a peace officer; and, (4) the peace officer was lawfully discharging an official duty. The evidence clearly supports the first three elements,

---

**2.** *Robinson v. State,* 764 S.W.2d, at 370 also observes:

"In construing a penal statute assailed as being unconstitutionally vague, we are enjoined not to strictly construe such statute and are to construe any provisions of the Penal Code according to the fair import of its terms, to promote justice and effect the objectives of the Code. Tex.Penal Code Ann. § 1.05(a).

"Also, when enacting a statute, the legislature is presumed to have intended compliance with the federal and state constitutions, that the entire statute is intended to be effective, that a just and reasonable result is intended, that a result feasible of execution is intended, and that the public interest is favored over any private interest. Tex.Gov't.Code.Ann. § 311.021." [Effective as of Sept. 1, 1985].

none of which is challenged by appellant. As to the fourth, appellant says the State must show that officers were lawfully discharging an official duty at the time of the offense. This issue was resolved in *Gonzalez v. State*, 574 S.W.2d 135, 136–7 (Tex. Crim.App. [Panel Op.] 1978) by reference to Penal Code section 38.03[3] and a finding that, "Even if appellant's contention is correct that the [warrantless] arrest was unlawful, his contention that the officer was not in the lawful discharge of an official duty is without merit.... Regardless of whether the appellant's arrest was lawful or unlawful, the [peace officer] was in the lawful discharge of his duty when he attempted to arrest appellant." *Salazar v. State*, 643 S.W.2d 953, 956 (Tex.Crim.App. 1983) reaffirmed *Gonzalez*, making the following two additional conclusions:

[A] conviction under 22.02(a)(2) does not depend on whether the arrest was legal, or on the defendant's belief about its legality.

The plain meaning of Section 22.-02(a)(2)(A) is that while the State must still prove the defendant knew or had been informed that he was assaulting a *peace officer*, proof that he also knew the officer was 'lawfully discharging an official duty' is unnecessary. [Emphasis in the original.]

*Salazar v. State*, 643 S.W.2d at 956.

While the language of Penal Code section 22.02 was modified after *Salazar* and before appellant's offense, the pertinent parts are identical.

This court ruled on the same subject (in a single point of error) in *McClatchy v. State*, 758 S.W.2d 328 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), and found that TEX.CODE CRIM.PROC.ANN. art. 14.03(a)(2) also resolves issues such as these. Article 14.03(a)(2) authorizes the warrantless arrest of "persons who the peace officer has probable cause to believe have committed an assault resulting in bodily injury to an-other person and the peace officer has probable cause to believe that there is a danger of further bodily injury to that person." In appellant's case the evidence shows police were in the home of appellant at the request of the householder who was appellant's father. The father complained of actual physical assault and threats with a knife. Police were justified in believing there was danger of further injury to the father and were justified in making a warrantless arrest of appellant in accordance with article 14.03(a)(2), excerpted above.

■ Appellant demands in his brief that the State prove his act was not necessary to defend against excessive force of an illegal arrest. We assume appellant refers to Penal Code section 9.31(c), which reads:

(c) The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

Even if the arrest were illegal, the use of force to resist unlawful arrest is not permitted under Penal Code section 9.31. according to *Craig v. State*, 594 S.W.2d 91, 94 (Tex.Crim.App. [Panel Op.] 1980). Appellant acknowledges the *Craig* holding but attacks it as dicta and also challenges its use on grounds of due process. We do not reach those issues because: (1) the arrest was lawful, as discussed above; and, (2) appellant had no reason to offer any kind of resistance under Penal Code section 9.31. It was appellant who first resisted arrest by establishing a barricade long before any arrest was attempted by police.

---

**3.** § 38.03 Resisting Arrest or Search

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest or search of the actor or another by using force against the peace officer or another.

(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

The only forces being exerted by police and against which it could be said appellant was resisting were the unsuccessful efforts of the police to push open the bedroom door. At the moment the ax head came through the door panel, the chief was merely talking with appellant through the door and trying to coax him out. We see no rational basis whatsoever for appellant to have reasonably believed it was necessary to use any force at all to protect himself, and therefore there is no necessity for this matter to have been an issue at trial.

■ We now turn to the questioned allegations in the indictment which read "[D]efendant did intentionally and knowingly threaten Harry Park [the police chief] with imminent bodily injury and did use a deadly weapon, namely, an ax, which in the manner of its use and intended use was capable of causing death and serious bodily injury." We find the following evidence in the record: (1) the police chief said appellant was talking to him both at the front window and at the bedroom door and knew who he was; (2) another officer verified that the chief told appellant of his presence outside the door; (3) appellant spoke on a first name basis with officers who were outside his bedroom door; (4) appellant made a number of threats to persons outside his door before the ax came through the door panel[4]; (5) appellant was the only person inside the bedroom; (6) the police chief said he was surprised and in fear of imminent bodily injury when the ax blade came within inches of his face; and, (7) an ax used in a manner such as here was said to have been capable of causing death or serious bodily injury. There was sufficient evidence to enable a rational finder of fact to conclude that appellant knowingly and intentionally threatened the complainant with imminent bodily harm. Appellant's second point of error is overruled.

■ Point of error number three draws our attention to the undisputed fact that the trial judge gave instructions to the jury without appellant or his counsel being present, to which appellant's counsel raised immediate objection which was overruled, followed by a motion for mistrial which was denied.

During jury deliberations, the following question was sent out:

Please clarify our duty toward the enhancements. Are we only to decide if Gilbert Damian is the person sentenced in the two incidents in Documents 11A & 12? ["pen packet" exhibits] Are we deciding if the documents are true or if the person is Gilbert Damian?

The response by the trial judge was as follows:

Members of the Jury: You must determine if it is true that (1) There was such a conviction alleged in the indictment; and (2) If Gilbert Santos Damian is the same person as the person convicted in the two causes alleged.

The record shows the trial judge made reasonable attempts to locate the attorney for the appellant before giving his response to the jury. However, the record fails to show any attempts to have appellant himself present when the supplementary instructions were formulated and handed back to the jury. We cannot condone such practice by the court, if true. Reasonable diligence must be used to secure the presence of the defendant and his counsel before written answers to jury questions are returned by the court. Tex.Code Crim. Proc.Ann. art. 36.27. This procedure allows proper objections and exceptions to be registered in advance so that erroneous jury instructions may be avoided. Appellant calls our attention to point of error number five where he complains that the supplemental instruction given the jury reduces the State's burden of proof to two elements: (1) the fact of a prior conviction, and (2) identity of appellant, and that the instruction eliminates the necessity for any finding on the sequence of convictions. We will review those aspects of this point number three later. As to the absence of the appellant or his counsel when instructions were given to the jury, if either or both

---

**4.** Among these threats was, "Mike [appellant addressing another police officer], I'm not coming out. I'm not talking to you. I'll cut your MF head off."

absences were error, we find beyond a reasonable doubt that any such error made no contribution to the punishment. Appellant's third point of error is overruled.

[Appellant's fourth point of error was withdrawn].

■ In his fifth point of error appellant challenges the charge on punishment, alleging that nowhere is there a jury instruction asking for a finding that a first felony conviction of appellant was final before appellant's second felony offense was committed. Appellant argues that a reversal is in order under the standards of either *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1985), or TEX.R.APP.P. 81(b)(2). Appellant cites *Rice v. State*, 746 S.W.2d 356 (Tex.App.—Fort Worth 1988, pet. ref'd), and *Ex parte Klasing*, 738 S.W.2d 648 (Tex.Crim.App.1987) as authority for claiming reversible error if harm is shown. Appellant also directs us to the supplemental instruction cited above in the review of point of error number three and he adds the word "only" into the judge's response to the jury. The response then reads:

Members of the Jury: You must determine (only) if it is true that (1) There was such a conviction alleged in the indictment; and (2) If Gilbert Santos Damian is the same person as the person convicted in the two causes alleged.

Appellant urges us to find that the jury instruction, as reconstructed by him, removes the need for the State to prove and the jury to find the initial prior conviction was final before the second offense was committed. The indictment is clearly referenced in both the preliminary jury instructions and in the supplemental instruction shown above. In both instructions the jury is directed to refer to the enhancement paragraphs as "alleged in the indictment." The enhancement section of the indictment was read into the record at the punishment phase of the trial in the presence of the jury. The sequence of convictions is set forth in the indictment and the charge to the jury reiterates those dates. Allegations of final conviction prior to commission of subsequent offenses appear in the indictment and are incorporated in the jury charge. The need for proof of the State's allegations appears in the charge along with the required standard of proof. The need also was given as supplementary information and instruction prior to the reading of the charge at the punishment phase of trial (when the court allowed the jury to decide on its adjournment for the day or possible sequestration if deliberations were to begin and not be completed):

[The] jury will be called upon to make a determination as to whether or not the two enhancement provisions under the indictment enhancement paragraphs are true or not true.

If you find that the State has proved both of the enhancement paragraphs, then you have one range of punishment. If you find that the State has failed to prove one of the two enhancement paragraphs, but proves the other enhancement paragraph, you have another range of punishment. If the jury finds that the State has failed to prove either of the two enhancement paragraphs, then you have a third range of punishment.

All of the alternatives given in the jury charge reference the State's allegations of final convictions prior to commission of subsequent offenses. Dates of the prior offenses and their related convictions are clearly shown in "Documents 11A & 12", exhibits about which the jury inquired in its note sent out during deliberation. We find these two exhibits were properly introduced into evidence for use in the punishment phase, contrary to appellant's recorded objections at trial. The first pen packet, "Document 11A," shows the offense of Criminal Mischief was committed on April 2, 1975, with a final conviction on November 14, 1978. The second pen packet, "Document 12," shows the offense of Aggravated Assault committed December 22, 1983, with a final conviction on August 20, 1984. The jury's verdict shows that appellant previously *had been convicted* of Aggravated Assault *prior to the commission* of the present offense (as alleged in the indictment), and that *prior to the commission* of that offense of Aggravated Assault he *had been convicted* of Criminal Mischief, (also

as alleged in the indictment). We may presume the verdict comes from the jury's deliberation of the evidence in light of the instructions and law given in the charge. *Benson v. State,* 661 S.W.2d 708, 715 (Tex. Crim.App.1982), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). We do not see error in failure to instruct the jury that it must first find the initial prior conviction alleged for enhancement was final before the second offense alleged for enhancement was committed. We find the indictment is adequately referenced throughout the proceedings to constitute proper jury notice and instruction. However, if there was error in the failure to have specific language in the charge directing the jury to find a sequencing of offenses and convictions, it was harmless beyond a reasonable doubt. Appellant's fifth point of error is overruled.

[Appellant's sixth point of error was withdrawn].

The judgment of conviction is affirmed.