Darryl Robert FRANCIS, Sr. *v.* Darryl Robert FRANCIS, II;
Linda Francis Northrip; and Marilyn Francis Obermiller

00–41                                                    31 S.W.3d 841

Supreme Court of Arkansas
Opinion delivered December 7, 2000

*Richard F. Hatfield*, for appellant.

*Smith, Maurras, Cohen, Redd & Horan, PLC*, by: *Matthew Horan*, for appellees.

L AVENSKI R. SMITH, Justice. Appellant Darryl Robert Francis, Sr. ("Francis"), appeals the Sebastian County Circuit Court's dismissal of his civil conspiracy and tortious interference with contract complaint. Francis filed the action against his children, Appellees Darryl Robert Francis, II ("Robert"), Linda Francis Northrip, and Marilyn Francis Obermiller, for prosecuting a guardianship proceeding against him. The parties settled the guardianship action before completion of the trial on the merits. On appeal, Francis argues that the trial court erred in applying the doctrines of *res judicata* and judicial estoppel to bar his tort claims against his children, particularly his daughters. We disagree and affirm.

*Facts*

In 1996, Francis, a retired banking official in his early 80s, retained Sherrian Krill as a paralegal to assist him with personal affairs. In January 1997, Francis's wife of fifty years, Loretta, died due to Alzheimer's disease. Over the course of the next year, Francis entered into a relationship with Krill. By March 1998, they had made plans to marry. On March 18, 1998, Krill negotiated and signed a real estate contract to buy a house priced at $342,000. The home would be paid for by Francis but titled in Krill's name only. The closing date on Krill's real estate contract was set for April 2, 1998. Concerned about his father's mental state, Robert filed a guardianship petition in the Sebastian County Probate Court on March 20, 1998. The complaint alleged that his father was mentally incompetent and cited medical reports from Francis's treating physician. The physician opined that Francis may be suffering from non-Alzheimer's dementia. The probate court entered an ex parte order naming Robert as his father's temporary guardian until a hearing could be held. Krill intervened on March 23, 1998, requesting to be appointed guardian if Francis were declared incompetent.

On April 1, 1998, the probate court set aside its ex parte order appointing Robert temporary guardian, but ordered that Francis be enjoined from contracting or transferring property to a third person pending the outcome of the guardianship proceeding. The probate court further ordered that Francis undergo a neurological evaluation and that Francis's attorney conduct interviews for the hiring of

a licensed practical nurse to assist Francis pending the final hearing. On April 2, 1998, Northrip and Obermiller petitioned to intervene in the proceedings arguing, too, that their father was incompetent due to the medical findings. They requested that either their brother be appointed guardian or, if Robert was not appointed, that a bank trustee be appointed. They also alleged that Krill asserted undue influence on their father by imposing herself on the person and property of Francis and by contracting to buy a home, for which she could not pay herself, with Francis's money.

The probate court entered another order on April 17, 1998, again appointing Robert temporary guardian and setting a hearing on July 1, 1998, to determine permanent guardianship. Discovery progressed and on June 29, 1998, Francis sued Robert in Sebastian County Circuit Court for abuse of process for filing the guardianship proceeding, alleging that the grounds for filing the guardianship were not proper under Arkansas law. Instead, Francis alleged, the true motives for the filing were to prevent him from marrying Krill and to prevent Krill from having access to Francis's property and finances. The guardianship hearing began on July 1, 1998, and completed a full day's trial. However, before proceeding to the second day, the parties agreed to a settlement with the following terms applicable to all parties to the action, including Francis, Robert, Northrip, Obermiller, and Krill:

a. The guardianship petitions filed by the children would be dismissed with prejudice;

b. The pending lawsuit filed by Francis against Robert would be dismissed with prejudice;

c. An irrevocable trust would be created for Francis' benefit during his lifetime, with the Arvest Trust Company named as trustee. The settlement noted that Francis would transfer all of his assets into the trust, excluding his retirement plan income and Social Security retirement benefits, and the income generated by the trust would be distributed to Francis and not be made part of the corpus of the trust. The trustee had discretion to invade the corpus of the trust to distribute funds to Francis to maintain his standard of living.

d. The trustee would provide adequate funds to finance and satisfy the purchase of the house and furniture for the house which Krill contracted to buy.

e. The trust would provide income during Francis' lifetime, provide a limited income for Krill for life after Francis' death. At the conclusion of the trust, the remaining assets would transfer to the ultimate beneficiary, the University of Missouri, or to whatever charitable entity Francis so chooses.

f. That each party shall pay its own attorney's fees.

The probate court read this settlement agreement into the record. The parties reduced it to writing, and the settlement agreement was included in the court's written order file marked July 16, 1998. In its order, the court further noted that "all matters in controversy between the parties to this action should be, and are hereby, disposed of in accordance with the terms of this Order and that all affirmative pleadings in this case should be, and are hereby, dismissed with prejudice." Pursuant to the agreement, Francis dismissed the circuit action against Robert with prejudice.

Following the settlement, Francis and Krill were married in August 1998. Approximately nine months later, on May 14, 1999, Francis sued all his children in the Sebastian County Circuit Court, alleging two tort claims and asking for damages. Francis first claimed that his children unlawfully civilly conspired to initiate a guardianship proceeding against him, and that they made allegations under oath which they did not believe to be true to attempt to take control of his property. Second, Francis claimed that his children tortiously interfered with his completion of the real estate contract to buy the home. Francis claimed compensatory damages in the amount of $360,000 for loss of property because the settlement agreement into which he entered caused the creation of a trust funded in part by the sale of his Baldor Electric Company stock. The sale of this stock resulted in substantial tax consequences that required the trust to sell more stock to pay the taxes. Francis also claimed compensatory damages in the form of $20,000 in attorney's fees for having to defend the guardianship proceeding. Finally, Francis also claimed $500,000 in punitive damages "for their intentional acts designed to injure Plaintiff, by extortion of the guardianship proceeding which was designed to prevent Plaintiff from completing the Contract, controlling his property and marrying Sherrian Krill."

The children filed a motion to dismiss or transfer to probate and chancery court and their answer on June 21, 1999, arguing that the trust, not Francis, was the appropriate party to bring a claim for any alleged damages to the trust. Furthermore, the children alleged

that Francis was not a party to the real estate contract and had no interest to bring the interference claim. The children noted that Francis did not attack the settlement agreement through the probate court, which retained jurisdiction over the parties in the claims decided by the settlement. They argued that these claims were barred by *res judicata* because they should have been pursued in the original complaint against Robert. In addition, the children requested that the case be transferred to a court of equity so that their equitable claims could be made to the court.

Francis responded on August 4, 1999, and the children replied on August 9, 1999. On September 22, 1999, the Sebastian County Circuit Court entered an order dismissing Francis's complaint against the children finding that Francis's claims were barred under the theories of *res judicata* and judicial estoppel. Specifically, the court found that the parties in this action were the same parties, by name or by privity, with the parties in the original complaint filed by Francis against Robert on June 29, 1998. As such, the court reasoned, the parties were bound by the terms of the settlement, and the causes of action, therefore, could not be raised in the new action. In addition, the court found that the doctrine of judicial estoppel barred Francis from taking inconsistent positions in successive cases with the same adversaries. Francis filed his notice of appeal on October 21, 1999. The children filed a notice of cross-appeal on October 29, 1999, but they have withdrawn the cross-appeal.

*Standard of Review*

Pursuant to Ark. R. Civ. P. 12(b) and (c), a motion to dismiss is converted to a motion for summary judgment when matters outside of the pleadings are presented to and not excluded by the court. *See McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998); *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Because it is clear from the wording of the order that the trial court considered matters outside of the pleadings, we review this appeal as one from summary judgment.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Ford v. Arkansas Game and Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998); *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998). The law

is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999); *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998), *supp. opinion on denial of reh'g*, 332 Ark. 189, 961 S.W.2d 712 (1998). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

## Res Judicata

On appeal, Francis argues that the circuit court erred in deciding that the doctrines of *res judicata* and judicial estoppel bar him from pursuing an action in tort against his children. Francis argues that *res judicata* does not apply to his daughters in this subsequent circuit court action because the previous circuit court lawsuit only involved his son, and the daughters do not qualify as privies in the prior action to bar the present action against them. Francis also argues that the trial court erred in applying the doctrine of judicial estoppel. He avers that fact questions remain regarding whether the daughters justifiably relied on the settlement agreement in the probate case to believe that Francis would not sue them later in circuit court for the alleged torts thus making summary judgment inappropriate. He argues that their claims in the guardianship proceeding were "suspect at best" as evidenced by their willingness to settle the matter.

In response, the children argue that the trial court correctly applied both theories to bar Francis's lawsuit in circuit court. They assert that the daughters were privies of Robert so that the dismissal in the settlement of Francis's original lawsuit against Robert also acted as a dismissal of any related claims against the daughters under the theory of *res judicata*. Furthermore, they contend judicial estoppel bars this subsequent circuit court action because the actions

about which Francis complains in the circuit court lawsuit were settled by agreement of all the parties, including Francis, and cannot be raised again. In addition, the children argue that Francis has no standing to bring an action for interference with the real estate contract because he was not the contracting party to that sale, and he, therefore, has no grounds on which to enforce the contract.

We agree with the circuit court that *res judicata* applies to bar Francis's subsequent tort action against his children based on the settlement in probate court, which included the dismissal with prejudice of Francis's original circuit court lawsuit against Robert. In *Arkansas Louisiana Gas Co. v. Taylor*, 314 Ark. 62, 858 S.W.2d 88 (1993), this court noted the elements of *res judicata*, stating:

> Under the doctrine of res judicata or claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. [Citation omitted.] Privity of parties within the meaning of res judicata means "a person so identified in interest with another that he represents the same legal right." *Spears v. State Farm Fire & Casualty Ins.*, 291 Ark. 465, 725 S.W.2d 835 (1987). Res judicata bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could have been litigated.

*Arkansas La. Gas Co.*, 314 Ark. at 65. In addition, this court has noted that

> [T]he test in determining whether res judicata applies is whether matters presented in a subsequent suit were necessarily within the issues of the former suit and might have been litigated therein. . . . [W]hen the case at bar is based on the same events and subject matter as the previous case, and only raises new legal issues and seeks additional remedies, the trial court is correct to find the present case is barred by res judicata.

*American Standard v. Miller Eng'g*, 299 Ark. 347, 351, 772 S.W.2d 344, 346 (1989). The true reason for holding an issue to be *res judicata* is not necessarily the identity or privity of the parties, but instead to put an end to litigation by preventing a party who has had one fair trial on a matter from relitigating the matter a second time. *Well v. Heath*, 269 Ark. 473, 602 S.W.2d 665 (1980).

As stated above, the parties reached an agreement during the trial in the guardianship proceeding in probate court. This agreement, among many things, specifically noted that Francis's original

circuit court lawsuit against Robert would be dismissed with prejudice, and that "all matters in controversy between the parties to this action should be, and are hereby, disposed of in accordance with the terms of this Order and that all affirmative pleadings in this case should be, and are hereby, dismissed with prejudice." Pursuant to the language in the settlement order, the action against Robert in circuit court and the remaining matters existing between the parties to the guardianship proceeding were dismissed with prejudice.[1]

██ Pursuant to the settlement in probate court, Francis dismissed the circuit action against Robert with prejudice. The dismissal with prejudice of that action meets the requisite elements of *res judicata*. Of the five elements needed to satisfy the doctrine, the parties in their arguments particularly focus on the fourth and fifth. These elements require that the same claims were or could have been litigated in the first lawsuit and that the actions involve the same parties. Francis argues that the second circuit court action involved claims that were not included in the probate matter or in the first circuit court action against Robert. We disagree. Again, the settlement in probate court included dismissals with prejudice of "all matters in controversy between the parties" and "all affirmative pleadings." Dismissal with prejudice is as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial. *Hicks v. Allstate Ins. Co.*, 304 Ark. 101, 799 S.W.2d 809 (1990). As intervenors, Northrip and Obermiller, as well as Krill, were as much parties to the settlement as were Robert and Francis. Consequently, there was a final adjudication on the merits of "all matters in controversy between the parties," and it is reasonable that Northrip, Obermiller, and Robert relied on the language of the settlement order to believe that their dispute with their father had ended.

██ In addition, the original circuit court lawsuit between Francis and Robert included or could have included the same claims Francis subsequently charged in his second circuit court lawsuit against all three children. Once the circuit court dismissed with prejudice Francis's claim against Robert, such a dismissal acted as an adjudication on the merits to bar this subsequent lawsuit.

---

[1] We note for purposes of subject-matter jurisdiction that the probate court did not lose jurisdiction of the matter because the parties entered into an agreement dismissing the petition as to the need for guardianship of the person. The court retained jurisdiction for the purpose handling Francis's assets consistent with Arkansas's Conservators statute found at Ark. Code Ann. § 28-67-101-111.

Francis conceded in his brief and at oral arguments that while the subsequent circuit court lawsuit could not succeed against Robert because of that dismissal with prejudice, the action remained viable against Northrip and Obermiller. Again, we disagree. The doctrine of *res judicata* applies to both the actual parties to a previous lawsuit and those in privity with them, *see Arkansas Louisiana Gas Co., supra*, and we hold that Northrip and Obermiller were privies of Robert in the original circuit court action. Therefore, the Circuit court's dismissal with prejudice of Francis's action against Robert acted as a dismissal with prejudice for Northrip and Obermiller.

We have noted that "privity of parties within the meaning of res judicata means 'a person so identified with another that he represents the same legal right.' " *Arkansas Louisiana Gas Co.*, 314 Ark. at 65; *see also*, 47 AM.JUR.2d *Judgments* § 663 (1995). We have never required strict privity in the application of *res judicata*, but instead have supported the idea that there must be a "substantial identity of parties" to apply the doctrine. *See Rose v. Jacobs*, 231 Ark. 286, 329 S.W.2d 170 (1959); *Wells v. Heath*, 269 Ark. 473, 602 S.W.2d 665 (1980). However, we have found privity for purposes of *res judicata* between a husband and wife in a land dispute lawsuit, *Collum v. Hervey*, 176 Ark. 714, 3 S.W.2d 993 (1928) (holding that a title quieted against a husband was conclusive against the wife who had not been a party in the original lawsuit), between a landlord and tenant, *Phelps v. Justiss Oil Co.*, 291 Ark. 538, 776 S.W.2d 662 (1987) (holding that a successor in interest in land is in privity with its grantor such that a prior ruling against the grantor is binding against the successor), between a testator and his remote heirs, *Hardie v. Estate of Davis*, 312 Ark. 189, 848 S.W.2d 189 (1993) (holding that a settlement by a testator is binding on the remote heirs), between an insurer and its insured, *Southern Farm Bureau Casualty Ins. Co. v. Jackson*, 262 Ark. 152, 555 S.W.2d 4 (1977) (holding that privity exists where insurer provided defense of insured except where the interests of the insured and insurer conflicted), and between a bankrupt debtor and his trustee, *Curry v. Hanna*, 228 Ark. 280, 307 S.W.2d 77 (1957).

Here, we hold that Northrip and Obermiller were Robert's privies because their interests "were so identified in interest with another" that they "represented the same legal right." Their motion to intervene in the probate case specifically requested the court to appoint Robert, not themselves, as Francis's guardian. It is clear from the pleadings that their interests were similar enough to

Robert's to make them privies, and that the dismissal of the circuit court lawsuit against Robert for claims of interference and malicious prosecution acted as a dismissal against the sisters. Having affirmed on the basis of *res judicata* there is no need to address the applicability of judicial estoppel.

Affirmed; motion to dismiss cross-appeal granted.

ARNOLD, C.J., dissents.

WH. "DUB" ARNOLD, Chief Justice, dissenting. Although I agree with the majority's recitation of the applicable standard of review, I respectfully disagree with the majority's application of that standard to the facts in the instant case. I cannot say that the circuit court did not err in finding that appellant's claims are barred by the doctrine of *res judicata*. *Res judicata*, or claim preclusion, bars the relitigation of a subsequent suit when (1) the first suit resulted in a judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involved the same claim or cause of action which was litigated or could have been litigated but was not; and (5) both suits involved the same parties or their privies. *Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 581, 864 S.W.2d 244, 246 (1993).

Applying the factors required to establish *res judicata*, I must concede that the Sebastian County Probate Court entered what purported to be a final order or judgment on the merits. In fact, the probate court expressly acknowledged in its July 16, 1998 order that "all matters in controversy between the parties to this action should be, and are hereby, disposed of in accordance with the terms of this Order and that all affirmative pleadings in this case should be, and are hereby, dismissed with prejudice."

However, I disagree with the majority's conclusion that the probate court had proper jurisdiction to enter its final order. This action began as a petition for guardianship. After a hearing on July 1, 1998, but before proceeding to a second day of trial, the parties entered into a "settlement agreement," in other words, a contract. Unfortunately, the probate court incorporated the terms of that contract into its final order dismissing appellees' guardianship petition. Notably, the July 16, 1998 order violates the court's own April 1, 1998 order enjoining appellant from contracting or transferring property to a third person *pending the outcome of the guardianship proceeding*. Of course, there was no outcome because the action was

dismissed. Further, the July 16, 1998 order embraces another direct violation of the April order, specifically, appellant's contractual agreement to "transfer all of his assets into [a] trust."

Most importantly, the probate court's July 16, 1998 order violates the governing provisions of Ark. Code Ann. section 28-65-213. Because the guardianship action was dismissed prior to a final determination of incapacity, the probate court lost jurisdiction over the matter. Section 28-65-113(b) states that:

> The burden of proof by clear and convincing evidence is upon the petitioner, and a determination of incapacity *shall* be made *before consideration of a proper disposition.*

(Emphasis added.) Here, the probate court never made the required determination of incapacity and, thus, could not consider any disposition, including the parties' alleged "settlement."

The majority suggests in a footnote that the probate court retained jurisdiction after the petition was dismissed via Arkansas' Conservator statute, Ark. Code Ann. section 28-67-101 to -111. Again, the record provides no basis for this leap of logic. Like the procedure for a guardianship proceeding, a conservatorship action must commence with the filing of a petition for appointment of a conservator. This may be accomplished by verified petition of a relative or friend who represents to the probate court that a person is unable to manage his property because of his advanced age or physical disability. The record evidences that no such petition was filed in the instant case. Second, a party may voluntarily consent to the granting of a conservator petition. Nonetheless, a petition must be filed and a notice of hearing must be served, or waived. Then, only after a full hearing and examination of the petition may the probate court appoint a conservator to the estate. These are not the facts before us.

As to the third prong of *res judicata*, I cannot agree that the case was fully contested in good faith, as plainly demonstrated by appellant's efforts to seek relief following the probate court's adoption of the settlement agreement. Curiously, only three months prior to the final order, the probate court believed appellant was incapable of entering into such a contractual agreement and specifically enjoined him from transferring property to a third person (e.g., a trust).

The majority also declines to discuss the long-standing exceptions to *res judicata*: (1) fraud or collusion in the procurement of the first judgment, and (2) lack of jurisdiction. Here, both exceptions apply. Indeed, the essence of appellant's circuit-court complaint challenges his children's motivations for initiating the guardianship action against him. Of course, it is telling that once appellant agreed to his children's terms, appellees willingly dismissed their petition for guardianship. The error occurred here when the probate court went beyond dismissing the petition to entering a disposition agreement that it no longer had jurisdiction to consider.

In the absence of a "determination of incapacity," as required by Ark. Code Ann. section 28-65-113(b), the probate court exceeded its jurisdiction by entering its July 16, 1998 order including the parties' settlement agreement. In light of the foregoing, I cannot agree with the majority that appellant's claims are barred by *res judicata* nor can I say that the circuit court did not err by granting summary judgment in favor of appellees. Viewing the evidence in the light most favorable to appellant, resolving any doubts against appellees, and finding that there remain genuine issues as to material facts, I believe it clear that the trial court erred by finding that appellees were entitled to a judgment as a matter of law.

I respectfully dissent.