2011 Ark. App. 198

**Holly McCLARAN, Appellant**

v.

**Amos R. TRAW & Moon–Ja Traw, his wife; Tony Lowe & Selena Lowe, his wife; and David Woodward & Kathy Woodward, his wife, Appellees.**

No. CA 10–862.

Court of Appeals of Arkansas.

March 9, 2011.

Rehearing Denied April 13, 2011.

David Wayne Sterling, North Little Rock, for appellant.

Raymond Timothy Starken, Cherokee Village, for appellees.

DAVID M. GLOVER, Judge.

Appellant Holly McClaran appeals from the trial court's April 27, 2010 order, which granted a permanent injunction against her. The injunction involved an

easement that was established in a May 12, 2008 judgment by Judge Philip Smith. The appellees in this case are Amos and Moon–Ja Traw, Tony and Selena Lowe, and David and Kathy Woodward, all of whom own property in the area and rely upon the easement to access their property, and, with the addition of the Woodwards, who did not own their affected property at that time, are the same parties to the May 12, 2008 judgment. Ms. McClaran contends that the trial court erred in issuing its permanent injunction against her because the order was "contrary to the evidence" and "violated the doctrine of res judicata." We reverse.

The judgment establishing the prescriptive easement provided in pertinent part:

> On January 22, 2008, the above styled cause of action was submitted to the Court on the complaint of the Plaintiffs requesting the Court to declare that they had acquired a prescriptive easement over a roadway commonly known as "Traw Lane" and that the Defendants be enjoined from interfering with the rights of the Plaintiffs and the public in general in their use of said roadway.
>
> The Court is well and sufficiently advised as to the premises, and upon consideration of the facts, pleadings and other matters finds as follows:
>
> . . . .
>
> (3) The roadway known as "Traw Lane" transverses the section line between Sections 21 and 16 running East and West from a county road known as Pleasant Run Road to the Northwest corner of East Half of the Northeast Quarter of Section 21, Township 21 North, Range 4 West, where it continues on to the Plaintiffs' lands.
>
> (4) The Court finds that in a previous lawsuit involving the Plaintiffs herein, an easement was granted other [sic] the portion of the roadway leaving the Northwest corner running west to Neal and Cynthia Rogers. *Neal and Cynthia Rogers v. Amos and Moon–Ja Traw,* Sharp County Circuit Court No. CV–2000–227.
>
> (5) From Mr. Traw's testimony he claims a reservation of that roadway by the estate of his father, but from the abstract the Court does not find any specific reservation and then in the later deeds to that property and the surrounding property and doesn't see that there had ever been any reservation of ownership of that roadway.
>
> (6) The Court finds that the actual ownership of the roadbed, the property where the road is, is actually contained within the deeds of Mrs. McClaran because she purchased that whole East Half of the quarter sections that are on both sides of that road, north and south, so it looks like from the drawing that's been introduced into evidence the roadway is probably contained in her deed to the East Half of the Northeast Quarter of Section 21.
>
> (7) The Court finds that the Plaintiffs have used the roadway know as "Traw Lane" as their only means of ingress and egress to their property for a period of time in excess of seven years, and by reason of such use of the roadway *the Plaintiffs and the public* have acquired a prescriptive easement.
>
> (8) The Court finds that it is clear that this road has been used for many years as a means to get into Mr. Traw's property; in fact, the Traws owned it at one time until the property was sold off after his father's death, and so it's clear that there has been an easement established for use of that roadway in and our [sic] by Mr. Traw and Mrs. Traw and obviously to their heirs and assigns in ownership of the property. And the Court is going to declare that there is an

easement by prescription to that roadway and that the roadway is an easement that is *twenty feet in width*. The Court understands that two fence lines are somewhat farther apart than that, but the *Court is finding from the evidence and from the photographs here that <u>the actual roadway does **not** go right up to the fence line</u>*. The reason the Court is *limiting this to twenty feet* is that there was no testimony that there's any particular need for more than that. The Court finds that *twenty feet* is enough room for two vehicles to pass if they are careful, unless one of them is a big vehicle obviously, in which case one is going to have to pull over. The Court is specifically doing this in order to solve this problem that was seen in the photographs of *some ditches that are being dug right back up against the fence posts and are eating into the bases of these fence posts and compromising the fences*.

(9) The Court finds that the *Plaintiffs have a right to <u>maintain the roadway</u>* in and out, and, if it needs fixing they can fix it so you can get in and out and do whatever you want to *as far as maintaining the roadway*. However, don't get into her fence lines and fence posts. The Defendant should be able to maintain her fences without having to go back out there and fill in ditches.

. . . .

IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED, that the roadway known as "Traw Lane" has become *a public way* by the continuous, prescriptive use by the Plaintiffs and others; that *the Plaintiffs and the public* are *granted a prescriptive easement to said roadway which will be twenty (20) feet in width;* and that the above findings by the Court

are hereby ordered effective immediately.

(Emphasis added.)

Thus, the judgment established a prescriptive easement for the plaintiffs (the Lowes and the Traws) and the public. And it could not have been more clear in setting the limits of the easement: it was to be twenty feet in width, it did not extend the full width between the ⌊₄fences, and the right to maintain was limited to the "roadway." There was no appeal from the judgment.

About a year and a half after the entry of the judgment, the Traws, the Lowes, and the Woodwards filed the motion for temporary and permanent injunction. In their motion, they acknowledged that the May 12, 2008 judgment "granted Plaintiffs a prescriptive easement for ingress and egress to 'Traw Lane' twenty (20) feet in width," but sought to enjoin McClaran from "keeping the present fence lines, from filling in the ditches, removing rock walls and from interfering with Plaintiffs' right to maintain their easement to 'Traw Lane.'" They also asserted that McClaran had "caused the fence lines which have defined the boundary between defendant's property and 'Traw Lane' for more than forty-five (45) years to be moved inward causing a narrowing of 'Traw Lane' making it impossible for school buses that must traverse 'Traw Lane' to proceed safely." Additionally, they claimed that other vehicles cannot pass safely without sustaining damage caused by the barb wire fencing now in place. Finally, they alleged that McClaran's actions of filling in ditches and removing rock walls were causing erosion to "Traw Lane," and if not abated, would permanently damage it.

Following a hearing concerning their request for permanent injunctive relief against McClaran, Judge Kevin King en-

tered the April 27, 2010 order, which provided in pertinent part:

> 4. That the Court interprets the prior order of Judge Smith to allow the Plaintiffs to *use the roadway from the fence, as one is looking down Traw Lane, the fence on the right will continue to remain in its present location. The fence on the left will be moved back to the old location; an area of almost thirty feet to make improvements, either through the county*₅ *or by themselves;* the only restriction being that it cannot interfere with Defendant's land;
>
> · · ·
>
> 6. Plaintiffs are to remain within that area *between where the old fence was on the right, and the new fence is going to be moved back to the location of the old fence;*
>
> · · ·
>
> 10. The Plaintiffs have the *right to maintain the entirety of the ground between the two fence lines;* that may be putting ditches in there as long as the ditches don't bother the road, or bother Defendant's land, and does not divert the water over on her land. The gates have to be within the fence line, they cannot protrude out into the roadway[.]

(Emphasis added.) Although the trial court declared that it was merely interpreting the original judgment, its April 27, 2010 order goes beyond interpretation. It substantially changes the nature of the original easement. Consider, for instance, the May 12, 2008 judgment clearly defined the easement as being twenty-feet wide and as *not* extending the full width between the fences. Moreover, it limited maintenance to the roadway itself, which was particularly described as being twenty-feet wide. However, the April 27, 2010 order extends the "roadway," *i.e.*, the easement, to thirty feet—from fence to fence. If the Traws and Lowes did not agree with the May 12, 2008 judgment, they could have appealed. They did not.

The doctrine of res judicata has two aspects: claim preclusion and issue preclusion. *Bisbee v. Decatur State Bank,* 2010 Ark. App. 459, 376 S.W.3d 505. The purpose of the doctrine is to put an end to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time. *Id.*

₆The issue-preclusion, or collateral-estoppel, aspect of res judicata is applicable to this case. It bars the relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment. *Id.* To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.* Issue preclusion may be asserted by a stranger to the first judgment, but the party against whom it is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in that first proceeding. *Id.* The doctrine of res judicata applies to both the actual parties to a previous lawsuit and those in privity with them. *Francis v. Francis,* 343 Ark. 104, 31 S.W.3d 841 (2000). We have explained that privity of parties within the meaning of res judicata means a person so identified with another that he represents the same legal right. *Id.* We have never required strict privity in the application of res judicata, but instead have supported the idea that there must be a substantial identity of parties to apply the doctrine.

*Id.* A successor in interest in land is in privity with its grantor such that a prior ruling against the grantor is binding against the successor. *Id.*

Here, (1) the issue sought to be precluded in the second case involved the nature and extent of the prescriptive easement that had been granted in the original judgment, including the easement's maintenance. Indeed, the second trial judge characterized his mission as interpreting the original judgment. Clearly, the issue in the second case was the same as that involved in the prior litigation; (2) the nature and extent of the prescriptive easement was actually litigated in the first case, as demonstrated by the lengthy quote from the original judgment set forth previously in this opinion; (3) the issue was determined by a valid and final judgment; and (4) the determination of the nature and extent of the prescriptive easement was essential to the original judgment. The *doctrine of res judicata*, in particular, issue preclusion, was asserted by McClaran against the Traws, the Lowes, and the Woodwards. The Traws and the Lowes were unquestionably parties to the original action, and they had a full and fair opportunity to litigate the issue in that first proceeding. Moreover, even though the Woodwards were not actual parties to the original action, they are both a successor in interest[1] and members of the public to whom the original easement was granted.

 Appellees, in countering appellant's res judicata argument, contend: "Here, the appellant urges the affirmative defense of res judicata ... as one of two grounds for attacking the ruling of the trial court. The failure of the appellant to raise the issue of res judicata to the trial court prior to its ruling, or in a timely filed posttrial motion, should serve as a waiver upon appeal. The court has repeatedly held that something more than a mere assertion of an argument in the pleadings is required to preserve an issue for appellate review." We have concluded that appellant did more than make a "mere assertion" of her res judicata argument. While it was not argued in the most efficient of manners, it would be incorrect to decide that it was waived. Appellant raised the doctrine of res judicata as an affirmative defense in her answer to the motion for injunctive relief. If that was all that she had done, appellees' argument might prevail. But appellant did more. Throughout the presentation of evidence, the prior order and what it provided was before Judge King. Again, the trial court characterized its task as interpreting the earlier judgment. Appellant asserted "res judicata" as the basis for at least two objections—which were sustained by the trial court—contending that the issues had already been decided in the earlier opinion and should not be delved into again. We are not convinced that the argument was waived by the manner in which appellant asserted it. Having concluded that the doctrine of res judicata was not waived and that it applies to this case, we reverse the April 27, 2010 order.

Reversed.

ABRAMSON and HOOFMAN, JJ., agree.

---

1. At the hearing before Judge King, Kathy Woodward testified that she and her husband purchased their property from Mr. and Mrs. Larry Flynn, who purchased it from Mr. and Mrs. Neil Rogers. See paragraph 4 of the May 12, 2008 judgment quoted previously in the body of this opinion.