Bessie Olean PHELPS, et al. *v.* JUSTISS OIL
COMPANY, et al.

86-186                                          726 S.W.2d 662

Supreme Court of Arkansas
Opinion delivered March 23, 1987
[Rehearing denied April 27 1987.]

*H. Derrell Dickens* and *Bobby E. Shepherd,* for appellants
Doris Crump Scaltritti, et al.

*Guthrie, Burbank, Dodson & McDonald,* for appellants
W.J. Ware, Jr. and Patricia M. Ware, Husband and Wife, Cora
Thomas Ware, and Laveta Hearn.

*Chandler & Thomason,* for appellee J.I. Phelps, Jr.

*Anderson, Crumpler & Bell, P.A.,* for Ellen Goode Lewis and Ellen Goode Lewis, Ltd.

DAVID NEWBERN, Justice. This case involves a question of title to mineral rights. Justiss Oil Company, Inc., Amoco Production Company, and Arkansas Louisiana Gas Company, are purchasing oil and gas being produced on the land in question. They have placed royalty funds in the registry of the court and brought an interpleader action to ascertain to whom the funds are owed.

The interpleaded parties all trace their mineral rights claims to J. Ira Phelps. All acknowledge that J. Ira Phelps owned the land but that his title was not of record when he conveyed it on January 30, 1919, to J. G. Matthews. That conveyance was by warranty deed, and it provided "[a]ll mineral rights reserved on above [d]escribed [l]ands." Matthews, on October 8, 1919, conveyed the land to Walter Dumas by warranty deed providing "[t]his deed covers and embraces 1/16 of all oil and gas royalties."

On January 25, 1920, J. Ira Phelps brought suit to quiet title in himself of all the mineral interest in the land. He alleged he had reserved all of it and that Matthews and Dumas were claiming to own it. Matthews and Dumas answered, contending that J. Ira Phelps's deed to Matthews had conveyed one-eighth of the mineral rights in the land. They counterclaimed against J. Ira Phelps, seeking reformation of the deed from J. Ira Phelps to Matthews to reflect that J. Ira Phelps had conveyed one-eighth of the mineral interest to Matthews, reserving seven-eighths for himself. No *lis pendens* notice was filed.

While the litigation between J. Ira Phelps and Matthews and Dumas was in progress, Dumas, on April 2, 1921, conveyed the land to D. D. Goode by warranty deed. Goode intervened in the quiet title litigation on June 16, 1921, joining in the contention of Matthews and Dumas and claiming to own the surface and one-eighth of all the oil and gas mineral rights. However, on January 12, 1922, Goode amended his pleading to claim that J. Ira Phelps's attempted reservation of the mineral rights had been wholly ineffective because of a conflict between the granting

clause and the habendum clause of the deed from J. Ira Phelps to Matthews. Goode's argument prevailed, and thus the chancery court quieted title to the surface and all minerals in Goode on January 26, 1922.

Between the time J. Ira Phelps commenced his quiet title action against Matthews and Dumas and the time of the decision quieting the title to the surface and minerals in Goode, J. Ira Phelps made three fractional royalty conveyances; one to F. J. Crump, one to F. J. Hearn, and one to W. J. Ware.

On October 18, 1948, Goode's estate conveyed the land to Bessie Olean Phelps, reserving one-half the mineral interest. On April 10, 1968, Bessie Olean Phelps conveyed the land to Ira Phelps, Jr.

The following is a diagram of the title:

J. Ira Phelps

January 30, 1919
Warranty deed reserving
all minerals. Recorded
March 29, 1922

J. G. Matthews

October 8, 1919
Warranty deed
"covers and embraces"
1/16 of all oil
and gas royalties.
Recorded, Jan. 24, 1920

June 12, 1920
1/16, being 1/2
of 1/8 of all
oil, gas, and
minerals. Recorded
June 20, 1920

F. J. Crump

Walter Dumas

April 2, 1921
Warranty deed
Recorded May 10, 1921

March 5, 1921
1/32, being 1/4 of
1/8 of all oil, gas
and minerals.
Recorded,
March 25, 1921

D. D. Goode

F. J. Hearn

October 18, 1948
Warranty deed
reserving 1/2
mineral interests to
Goode's heirs
(Ellen Goode Lewis)

April 7, 1921
1/64, being 1/8
of 1/8 of all
oil, gas, and
minerals.
Recorded
April 9, 1921

Bessie Olean Phelps

April 10, 1968
Warranty deed

W. J. Ware

Ira Phelps, Jr.

In their interpleader action, Justiss, Amoco, and Arkla named the following persons as defendants: Bessie Olean Phelps; J. Ira Phelps, Jr., and his wife; the heirs of F. J. Crump; the heirs of F. J. Hearn; and the heirs of W. J. Ware. They later amended to add Ellen Goode Lewis and Ellen Goode Lewis, Ltd., as defendants.

The chancellor held that Ellen Goode Lewis, Ltd., whose interest in the minerals stemmed from the reservation of one-half the mineral interest to the Goode estate, and Ira Phelps, Jr., whose rights also originated in the Goode estate, were the only parties entitled to the royalties. The Crump, Hearn, and Ware heirs, who are the appellants here, were held to have no entitlement. The decree in part provided:

> From these facts, the Court finds that Phelps had no record title at the time of his conveyances to Crump, Hearn and Ware. The purchasers were either charged with actual notice of the pending litigation instituted by Phelps, or charged with a duty to investigate the condition of the title. The purchasers are charged with actual notice of the litigation, and are bound by the final decree in that litigation dated January 26, 1922, in which it was ruled that all the minerals were vested in D. D. Goode. . . .

We agree with the result reached by the chancellor, and thus we affirm the decree.

The Ware and Hearn heirs argue it was error to charge F. J. Hearn and W. J. Ware with knowledge of the litigation between J. Ira Phelps and Matthews and Dumas at the time their ancestors received fractional royalty conveyances from J. Ira Phelps. The Crump heirs make the same argument with respect to F. J. Crump, and they also argue the 1922 decree erroneously held invalid the reservation of the mineral rights in the deed from J. Ira Phelps to Matthews.

### 1. The quiet title decree

The brief filed on behalf of the Crump heirs invites us to hold that the 1922 decree was incorrect, as the reservation to J. Ira Phelps of all the minerals was obviously in the granting clause rather than in the habendum, thus it was error to hold there was a conflict. The brief filed by J. Ira Phelps, Jr., takes no exception to

that interpretation of the deed, but it and the brief of Ellen Goode Lewis and Ellen Goode Lewis, Ltd., both note that Crump, Hearn, and Ware were all in privity with J. Ira Phelps, and thus by the doctrine of res judicata they are bound by that decree.

The res judicata issue and the extent to which the heirs of Crump, Hearn, and Ware are bound by the 1922 decree will be discussed below. The short, but complete, answer to the request of the Crump heirs that we hold the 1922 decree erroneous is that it has not been appealed, and we are aware of no authority which would permit us to reverse it now.

## 2. Notice

The heirs of Hearn and Ware contend the chancellor in the decree now on appeal erred in holding that their ancestors who purchased from Phelps were on notice, either actual or inquiry, of the litigation between J. Ira Phelps and Matthews, Dumas, and Goode.

The appellants stipulated that the interests Crump, Hearn, and Ware purchased from J. Ira Phelps were non-participating royalty interests. Conveyances of royalty interests are governed by the same law as land conveyances generally. 3A W. Summers, Oil and Gas, § 598, n. 61, p. 197 (2nd ed. 1958), citing *Johnson v. Palmer*, 220 Ark. 397, 247 S.W.2d 995 (1952). One who purchases from a grantor who does not have an apparently perfect record title is not a bona fide purchaser for value without notice. *Taylor v. Scott*, 285 Ark. 102, 685 S.W.2d 160 (1985); 2 *American Law of Property*, § 10.82 (A.J. Casner ed. 1952). Crump, Hearn, and Ware, therefore, took their royalty interests with notice of any defects in Phelps's title to the mineral interests.

By its decree of January 26, 1922, the Columbia County Chancery Court held that J. Ira Phelps had not reserved any mineral interest when he conveyed to Matthews on January 30, 1919.

The Crump heirs insist, and they are joined by the Hearn and Ware heirs in arguing, that if Crump, Hearn, and Ware were on notice of the litigation between J. Ira Phelps and Matthews and Dumas they would have known only that Matthews and Dumas were claiming only a ⅛ interest in the minerals. Their inspection

of the original pleadings in that litigation would have shown that, even if Matthews and Dumas prevailed, J. Ira Phelps would have had enough remaining mineral interest (⅞) to satisfy his conveyances to them. We might be persuaded by that argument if the issue here involved solely the effect of notice of the litigation, but that is not the case. Here, we are concerned not just with notice of the litigation but with notice of any flaw in the title of J. Ira Phelps. The court held in 1922 that J. Ira Phelps held no title to that which he previously purported to convey to Crump, Hearn, and Ware because his 1919 attempt to reserve it was defective.

### 3. Res judicata

ALI Restatement, Second, Judgments, § 43 (1980) provides, in part, as follows:

> § 43. Effect of Judgment Determining Interests in Property on Successors to the Property
>
> A judgment in an action that determines interests in real or personal property:
>
> > (a) Conclusively determines the claims of the parties to the action regarding their interests; and
> >
> > (b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.

The doctrine of res judicata thus would clearly have precluded J. Ira Phelps from relitigating with D. D. Goode the title to the mineral interest in question. It is equally preclusive of those in privity with J. Ira Phelps and whose title is dependent upon the validity of his title. *Bentrup* v. *Hoke*, 245 Ark. 572, 433 S.W.2d 139 (1968); *Missouri Pacific Railroad Co.* v. *McGuire*, 205 Ark. 658, 169 S.W.2d 872 (1943); *Turley* v. *Owen*, 188 Ark. 1067, 69 S.W.2d 882 (1934).

### 4. Conclusion

The real rub in this case is the appellants' contention that the 1922 decree was incorrect. The chancellor in the decree now on appeal apparently agreed that the 1922 decree was

erroneous. As he recognized, apparently, the fact that a previous decree may have been erroneous or was patently so does not lessen its binding effect. *Wells* v. *Heath*, 269 Ark. 473, 602 S.W.2d 665 (1980); *Tri-County Highway Improvement District* v. *Vincennes Bridge Co.*, 170 Ark. 22, 278 S.W. 627 (1926).

Affirmed.