Iva Belle HARDIE, Ruby Jean Morris, Sondra Kay Lee, Sharon Faye Stewart, Donald Davis Kreipde, Doris Raye Clyma, and Elizabeth Nell Scott *v.* The ESTATE OF Alline B. DAVIS and the Alline B. and C.C. Davis Charitable Foundation

92-642 & 92-643                          848 S.W.2d 417

Supreme Court of Arkansas
Opinion delivered March 1, 1993

*Hardin, Jesson, Dawson & Terry*, by: *J. Rodney Mills*, for appellants.

*Pryor, Barry, Smith, Karber & Alford*, by: *Thomas B. Pryor*, for appellee.

JACK HOLT, JR., Justice. Appellants are seven remote heirs of Alline B. Davis: Iva Belle Hardie was Alline B. Davis' sister and the other named appellants were nieces and a nephew of Mrs. Davis (hereafter "the remote heirs"). Appellees are the Estate of Alline B. Davis and the Alline B. and C.C. Davis Charitable Foundation (hereafter "the estate").

Alline B. Davis, widow of C.C. Davis, died on July 29, 1991. Before her husband's death, the Davises sought to set up an estate plan providing for the survivor of them, minimizing estate taxes, and setting up a charitable trust in their names, the Alline B. and C.C. Davis Charitable Foundation. Mr. Davis executed two wills: one dated September 13, 1978 and one dated January 3, 1980.

Mr. Davis entered into the trust agreement setting up the charitable foundation with Merchants National Bank of Fort Smith (hereafter "Merchants") on February 19, 1980.

Mr. Davis' 1978 will stated that he did not want to leave his daughters anything and left his wife an amount exempt from estate taxes under the marital deduction and other deductions and exempt under a unitrust with the remainder of his estate going to the Davis Charitable Foundation. This will specifically sets out this foundation and names the trustees.

Mr. Davis' 1980 will again stated that he expressly did not want to leave his daughters anything and left his wife an amount exempt from estate taxes under the marital deduction, $5,000 to the Boys Club of Fort Smith, and $5,000 to Sparks Manor of Fort Smith, the nursing home where his wife resided. The rest of his estate was devised to Evelyn and Bill Bateman, his niece and her husband, with the understanding that they were to look after Mrs. Davis. The Batemans were also appointed co-executors. The 1980 will made no mention of the charitable foundation, but a subsequent trust agreement was executed on February 19, 1980 that made an inter vivos transfer of the bulk of Mr. Davis' estate to the foundation.

Mrs. Davis' will was executed on March 3, 1979. She was adjudicated incompetent on September 13, 1979, and First National Bank of Fort Smith (hereafter "First National") was appointed guardian of her estate.

After Mr. Davis' death on May 25, 1981, an inventory of the estate revealed under the 1980 will, Mr. Davis only had estate of $370.00, the balance having already been transferred by him to the charitable foundation under the trust agreement in 1980. First National, as legal guardian of the estate of Alline B. Davis, and his daughters, Chloe Ramsey and Jewel Swindle, challenged the 1980 will and trust agreement. As a result, on December 16, 1981, First National entered into a settlement agreement (hereafter "settlement agreement") with Merchants, Bill Bateman, Evelyn Bateman, Chloe Ramsey, Jewel Swindle, and the trustees of the Alline and C.C. Davis Charitable Foundation. By decree dated January 21, 1982, the Chancery Court of Sebastian County approved the settlement agreement which, was signed by trust officers for First National and Merchants, Bill and Evelyn

Bateman, Betty Chloe Ramsey, Jewel Swindle, Wayne Swofford (executor of Mrs. Davis' estate), J. Michael Shaw (estates' attorney), and W.J. Echols, Jr. (trustee of charitable foundation). The effect of the settlement agreement was:

(1) the 1980 will was voided;

(2) the 1980 inter vivos transfer by Mr. Davis of the bulk of his estate was voided and this property was brought back into the estate;

(3) $40,000 in trust income as payment to attorney P.H. Hardin for attorneys' fees;

(4) $50,000 in trust income to Bill Bateman for services;

(5) $300,000 to Alline Davis;

(6) $300,000 to Alline Davis in unitrust form to be paid over to the Davis Charitable Foundation upon her death;

(7) $75,000 each to daughters, Chloe Ramsey & Jewel Swindle;

(8) the remainder of the estate after expenses to the Batemans.

Also, the settlement agreement expressly provided:

8. Betty Chloe Ramsey, Jewel Swindle, Bill Bateman, Evelyn Bateman, and their respective attorneys, John H. Fitzhugh, Lem Bryan, P. H. Hardin and Franklin Wilder, agree that the will prepared by Bruce Shaw executed by Alline B. Davis on March 3, 1979, is the valid last will and testament of Alline B. Davis, and that neither they nor any persons associated with them will contest, challenge, or by any word or act question or impugn the validity of the Alline B. Davis will dated March 3, 1979, or do any other thing to impede or impair the probate of such will as the last will and testament of Alline B. Davis.

. . .

11. This instrument includes all agreements of the parties, and there are no other representations, considerations or commitments between the parties other than those expressed herein. This agreement shall be binding upon

the heirs and legal representatives of the parties.

Mrs. Davis died on July 29, 1991, leaving an estate appraised at $881,570.00.

On July 31, 1991, Wayne Swofford and First National, co-executors named in Mrs. Davis' will, filed a petition to probate her March 3, 1979 will. This will left her entire estate to her husband should he survive her or to the Alline B. and C.C. Davis Charitable Foundation should he predecease her. No other gifts, bequests, or devises were included in the will. The petition for probate specifically listed the following surviving heirs:

Iva Hardie, sister
Alline B. and C.C. Davis Charitable Foundation
Sondra Lee, niece
Sharon Stewart, niece
Don Kreipke, nephew
Evelyn Bateman, niece
Doris Clyma, niece
Jean Morris, niece
Nell Scott, niece

Although the record appears silent on the matter, it is evident that the Davises' two daughters, Betty Chloe Ramsey and Jewel Swindle, predeceased Mrs. Davis since they were not listed as surviving heirs on the petition to probate.

After notice was duly given to these survivors and published as required, the will was probated on August 5, 1991. All the survivors listed on the petition to probate except for the foundation contested the will by petition filed November 1, 1991, on the basis that Mrs. Davis was incompetent and under the undue influence of third parties when the 1979 will was executed. Ms. Hardie was Mrs. Davis' sister and the others are nieces and nephews.

The estate replied that Mrs. Davis, through her legal guardian, agreed to the settlement agreement and its terms, and, the persons now claiming to be the heirs of Alline B. Davis are in privity with their ancestor, and as such under the settlement agreement are estopped to deny the validity of the March 3, 1979 will pursuant to which the property comprising the estate of Alline B. Davis is to pass at the time of her death to the Alline and

C.C. Davis Charitable Foundation. Also, the estate argued that to permit the persons claiming to be heirs of Alline B. Davis to repudiate the agreement which their ancestor entered into with the Alline and C.C. Davis Charitable Foundation would constitute a fraud on the foundation. The estate also filed a motion for summary judgment and to transfer to chancery on the equitable issues of specific performance, estoppel, and fraud. In support of the motion for summary judgment, the estate attached the affidavit of Wayne Swofford, Vice President and Trust Officer of First National, who stated he had worked as a C.P.A. for twenty years for the Davises, that it was their wish to set up a charitable foundation with their estates, and that both were competent and possessed testamentary capacity when their foundation was created.

On December 19, 1991, Probate Judge Harry A. Foltz entered an order transferring the equitable issue to chancery and a separate order directing the clerk to assign the case in chancery to him "[b]ecause part of this case will be tried in Probate Court by the undersigned judge and part of the case in Chancery Court, it is imperative that the same judge hear the case."

The collateral heirs argued that since Mrs. Davis did not sign the settlement agreement herself, it was not binding on her pursuant to Ark. Code Ann. § 28-24-101(1)(c), "a contract to make a will or devise, or not to revoke a will or devise, to die intestate if executed after June 17, 1981, can be established only by. . .(c) a writing signed by the decedent evidencing the contract."

On February 24, 1992, as chancellor, Judge Foltz granted the trust's motion for summary judgment on the basis that the foundation was supported by Mr. Swofford's affidavit and the remote heirs had not introduced any affidavits rebutting his statements; that Alline B. Davis was a proper party to the settlement agreement through her guardian; the settlement agreement induced the charitable foundation to give up rights and claims to Mr. Davis' estate; that the will contestants are heirs at law of Alline B. Davis and as such stand in privity to her and are bound by the agreement. The chancellor found there was no genuine issue of material fact and ordered specific enforcement of the agreement and estoppel of the remote heirs from challenging

the 1979 will.

On February 27, 1992, Judge Foltz as probate judge dismissed the will contest with prejudice on the basis of his findings as chancellor. His probate court order was appealed to this court, and his chancery court order was appealed to the court of appeals. Since both cases involved the same parties, issues, and subject matter, we consolidated the appeals by order dated June 29, 1992.

We most recently summarized the standard of review for summary judgment in *Tullock* v. *Eck*, 311 Ark. 564, 845 S.W.2d 517 (January 25, 1993):

> The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes* v. *Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a light most favorable to the party resisting the motion and any doubts and inferences must be resolved against the moving party.

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ark. R. Civ. P. 56(c). While there might well have been disputed issues of negligence had this case gone to trial, the only issue with which we are concerned is whether the statute of limitations was tolled by continuous treatment. As to the latter, there is no factual dispute. The question is thus whether Dr. Eck was entitled to judgment as a matter of law.

The standard of review for summary judgment is whether the evidentiary items presented by the appellee in support of the motion left a material question of fact unanswered. *Wilson* v. *General Elec. Capital Auto Lease*, 311 Ark. 84, 841 S.W.2d 619 (1992); *Barraclough* v. *Arkansas Power & Light Co.*, 268 Ark. 1026, 597 S.W.2d 861 (1980). In appeals from the granting of summary judgment, we review facts in a light most favorable to the appellant and resolve any doubt against the

moving party. *Thomas* v. *Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). *See Sanders* v. *Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992).

The central issue in this case is whether the remote heirs have the power to attack a court-approved settlement agreement. It should be noted that at the time the settlement agreement was executed, these remote heirs were not "interested persons" entitled to contest a will under Ark. Code Ann. § 28-40-113(a) (1987) because they would not have taken by intestate succession at that time since Mrs. Davis' two daughters were still living. *See Mabry* v. *Mabry*, 259 Ark. 622, 535 S.W.2d 824 (1976) (brothers and sisters of testator were not interested persons where testator had adopted son living); *Hawkins* v. *Hawkins*, 218 Ark. 423, 236 S.W.2d 733 (1951) (just any collateral heir is not necessarily an "interested person" with a right to contest the probate of a will under Ark. Code Ann. § 28-40-113 (1987)).

■■ We hold that the grant of summary judgment was proper because we agree with the chancellor that the settlement agreement is a valid, enforceable contract which Mrs. Davis' guardian had the authority to enter into on her behalf. Ark. Code Ann. § 28-65-318(a) specifically provides for settlement agreements and for the guardians to execute them:

28-65-318. Compromise settlements.

> (a) On petition of the guardian of the estate, the court, if satisfied that the action would be in the interest of the ward and his estate, may make an order authorizing the settlement or compromise of any claim by or against the ward or his estate, whether arising out of contract, tort, or otherwise, and whether arising before or after the appointment of the guardian.

Also, Ark. Code Ann. § 28-65-302(7) (1987) lists "consent to a settlement or compromise of any claim by or against the incapacitated person or his estate" as a type of action which guardians must petition and obtain express court approval to carry out. Here, the probate court was petitioned and specifically approved the settlement and authorized the guardian to sign the settlement agreement as allowed by statute. We see no reason to overturn that approval.

■■ We further hold that the chancellor was correct in finding that the appellants here are in privity with her and are therefore bound by the settlement agreement. *Kennedy* v. *Quinn*, 177 Ark. 1069, 9 S.W.2d 315 (1928). The settlement specifically stated, "This agreement shall be binding upon the heirs and legal representatives of the parties." Our holding that privity exists is necessary to preclude possible claims to her estate in the future. We have long held that equitable estoppel binds the immediate parties and their privities by blood, estate, or contract. *Vaughn* v. *Dossett*, 219 Ark. 505, 509, 243 S.W.2d 565, 568 (1951) (citing *Mason* v. *Dierks Lumber & Coal Co.*, 94 Ark. 107, 125 S.W. 656 (1910)); *Simmons* v. *Simmons*, 203 Ark. 566, 571, 158 S.W.2d 42, 45 (1942); *Johnson* v. *Commonwealth Bldg. & Loan Assoc.*, 182 Ark. 226, 31 S.W.2d 136 (1930); *McKenzie & Rumph*, 171 Ark. 791, 286 S.W.2d 1022 (1926). *See Ward* v. *Davis*, 298 Ark. 48, 765 S.W.2d 5 (1989); *Haynes* v. *Metcalf*, 297 Ark. 40, 759 S.W.2d 542 (1988); *Moorehead* v. *Universal C.I.T. Credit Corp.* 230 Ark. 896, 898, 327 S.W.2d 385, 387 (1959). *See also Phelps* v. *Justiss Oil Co.*, 291 Ark. 538, 726 S.W.2d 662 (1987) (quoting the Restatement 2d, Judgments, 43(b) (1980) for the rule that a judgment in an action that determines interests in real or personal property has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself).

The settlement agreement in question was a contract specifically allowed for by Ark. Code Ann. § 28-65-318 (1987). Assuming proper statutory procedures have been followed, we look on such a settlement agreement with favor as a means to avoid costly litigation over decedents' estates and to bring the estate to a prompt and final close.

We hold that the settlement agreement before us effectively determined the respective rights of the parties and that the probate court was correct in bringing the Davis estate to a proper and final close.

Affirm.