JAYEL CORPORATION *v.* Tamra COCHRAN
and Cochran & Croxton

05-1005                                            234 S.W.3d 278

Supreme Court of Arkansas
Opinion delivered April 20, 2006

*Pryor, Robertson & Barry, PLLC*, by: *C. Brian Meadors* and *Rebekah J. Kennedy*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Clifford W. Plunkett* and *Seth M. Haines*, for appellees.

Tom Glaze, Justice. The Jayel Corporation purchased an undeveloped plot of land in Benton County and built a residential subdivision called Carriage Square. John and Janice Fryer operated a tree farm on an adjoining piece of land. The Fryers claimed that their land incurred substantial damage as a result of flooding caused by Jayel's development. The Fryers hired Tamra Cochran — an attorney with the law firm Cochran & Croxton, P.A. — to pursue a legal action against Jayel.

On July 11, 2002, Cochran, acting on behalf of the Fryers, filed suit against Jayel for nuisance and trespass. On July 17, 2002, Cochran — once again acting on behalf of the Fryers — filed a *lis pendens* against Jayel in order to put any future landowners on notice of the pending suit. In response, Jayel filed a counterclaim against the Fryers claiming that the Fryers' *lis pendens* was not justified under Arkansas law. In addition, Jayel filed a third-party claim against Northstar Engineering Consultants, Inc., the engineers responsible for the Carriage Square development.

Before going to trial in this matter, the Fryers, Jayel, and Northstar all agreed to mediate their disputes. At the close of mediation, the parties thought that they had a meeting of the minds, but as it turned out, they did not. Jayel believed that the terms of the settlement expressly allowed it to pursue an action against Cochran in her individual capacity. These terms were never conveyed to the Fryers or Cochran. Unaware of the disagreement, all parties signed a one-page document entitled "Mediation Agreement." It appears that this agreement contained general terms of settlement; however, portions of the document have been marked out and are illegible.

Eventually, the Fryers, Jayel, and Northstar each realized that the mediation terms had not been completely settled. The trial court ordered an evidentiary hearing to determine what had been

agreed upon at the settlement. Because the Fryers', Jayel's, and Northstar's previous lawyers would likely be called upon to testify at the evidentiary hearing, each party was forced to retain new counsel. As a result, Cochran withdrew herself as the Fryers' attorney. Ultimately, the parties agreed to a more detailed settlement agreement than the one signed at the close of the mediation. As part of the new agreement, Jayel was allowed to proceed against Cochran in her individual capacity. In addition, the Fryers executed a multi-page release in exchange for a settlement check from Jayel; and finally, all pending litigation between the Fryers, Jayel, and Northstar was dismissed with prejudice.

Jayel then brought this present action against Cochran, in her individual capacity, and her law firm, Cochran & Croxton, P.A.. The allegations against Cochran were identical to the claims previously filed against the Fryers. Specifically, Jayel alleged that Cochran's filing of the *lis pendens* on behalf of the Fryers constituted an abuse of process, slander of title, trespass, and conversion. In addition, Jayel claimed that Cochran's actions amounted to a violation of Ark. Code Ann. § 5-37-226 (Repl. 2006).[1] In response, Cochran filed a motion to dismiss pursuant to Rule 12 of the Arkansas Rules of Civil Procedure. On July 30, 2004, the trial court granted Cochran's motion with respect to the slander of title, trespass, conversion, and statutory claims, but denied Cochran's motion with respect to the abuse-of-process claim.

Subsequently, Cochran filed a motion for summary judgment on the remaining abuse-of-process claim; this time, the trial court granted Cochran's motion, finding that Jayel's claim was barred by the doctrine of *res judicata*. Jayel now appeals from the trial court's order granting both Cochran's motion to dismiss and the court's order granting Cochran's motion for summary judgment. Cochran has filed a contingent cross-appeal challenging the trial court's denial of her motion to dismiss in regards to the abuse-of-process claim.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See Francis v. Francis*, 343 Ark. 104, 31

---

[1] Ark. Code Ann. § 5-37-226 (Repl. 2006) outlaws the filing of any instrument clouding or adversely affecting the title or bona fide interest in real property with the knowledge of the instrument's lack of authenticity or genuineness. This claim was not previously brought against the Fryers.

S.W.3d 841 (2000); *Ford v. Arkansas Game & Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998). The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999); *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998).

For its first point on appeal, Jayel claims that the trial court erred in granting summary judgment and dismissing its abuse-of-process claim based on the doctrine of *res judicata*. The doctrine of *res judicata* bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *State Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999); *Miller County v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998). *Res judicata* bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated. *Wells v. Arkansas Pub. Serv. Comm'n*, 272 Ark. 481, 616 S.W.2d 718 (1981). Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Swofford v. Stafford*, 295 Ark. 433, 748 S.W.2d 660 (1988).

In the present case, Jayel concedes that the first four elements of *res judicata* have been satisfied, and focuses instead on the fifth element involving privity. Privity exists for purposes of *res judicata* when two parties are so identified with one another that they represent the same legal right. *Parker v. Perry*, 355 Ark. 97, 104, 131 S.W.3d 338, 344 (2003).

This court has never required strict privity in the application of *res judicata*; instead, it has supported the idea that there must be a "substantial identity of parties" to apply the doctrine. *Wells v. Heath*, 269 Ark. 473, 602 S.W.2d 665 (1980); *Rose v. Jacobs*, 231 Ark. 286, 329 S.W.2d 170 (1959). For example, we have found privity for purposes of *res judicata* between a brother and a sister in a claim alleging civil conspiracy and tortious interference, *Francis v. Francis*, 343 Ark. 104, 31 S.W.3d 841 (2000) (holding that son's settlement with father involving a guardianship proceeding was *res judicata* as to father's subsequent suit against daughter); between an insurer and its insured, *Southern Farm Bureau Casualty Insurance Co.*

*v. Jackson*, 262 Ark. 152, 555 S.W.2d 4 (1977) (holding that privity exists where insurer provided defense of insured except where the interests of the insured and insurer conflicted); and between a husband and wife in a land-dispute lawsuit, *Collum v. Hervey*, 176 Ark. 714, 3 S.W.2d 993 (1928) (holding that a title quieted against a husband was conclusive against the wife who had not been a party in the original lawsuit). *See also Hardie v. Estate of Davis*, 312 Ark. 189, 848 S.W.2d 417 (1993); *Phelps v. Justiss Oil Co.*, 291 Ark. 538, 726 S.W.2d 662 (1987); *Southern Farm Bureau Cas. Ins. Co. v. Jackson*, 262 Ark. 152, 555 S.W.2d 4 (1977); *Curry v. Hanna*, 228 Ark. 280, 307 S.W.2d 77 (1957).

Jayel argues that there was no privity between Cochran and Fryer for the following three reasons: (1) the settlement agreement that the Fryers signed expressly allowed Jayel to pursue its lawsuit against Cochran; (2) at the time of the Fryer-Jayel settlement, Cochran was not the Fryers' attorney; and (3) there was a conflict between Fryer and Cochran in that it was in the Fryers' interest to keep the settlement check it had received from Jayel and leave Cochran to "fend for herself against Jayel's lawsuit."

Jayel relies primarily on *Allbright Bros. v. Hull-Dobbs Co.*, 209 F.2d 103 (6th Cir. 1954), and *Moore v. Missouri Pacific Railroad*, 299 Ark. 232, 773 S.W.2d 78 (1989), in support of its position. In *Allbright*, the tortfeasor, Allbright, entered into a "full and complete settlement of any and all claims . . . arising out of the incident complained of." *Allbright*, 209 F.2d at 104. Following the settlement, Allbright sought contribution from other joint tortfeasors involved in the same incident. The joint tortfeasors moved to dismiss, claiming that Allbright's claim was barred by *res judicata*. Applying Arkansas law, the Sixth Circuit held that "a release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides." *Id.*

In *Moore*, a passenger in a car was killed when the car was struck by an oncoming train. Following the accident, a representative of the deceased was paid an undisclosed amount of money in exchange for a full release of future claims against the driver and her insurance company. *Moore*, 299 Ark. at 233. Subsequent to the settlement, the representative brought suit against the railroad company and the train conductor, alleging separate acts of negligence. The trial court dismissed the suit based on *res judicata* even though the defendants were not named in the settlement agreement. On appeal, this court reversed and held that the Uniform

Contribution Among Tortfeasors Act mandated that "a release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides." *Moore*, 299 Ark. at 235; Ark. Code Ann. § 16-61-204 (Repl. 2005).

Basing its argument on the reasoning set out in *Allbright* and *Moore*, Jayel contends that *res judicata* does not apply in this case because Cochran was not named in the release. This argument is based on the faulty assumption that Cochran and the Fryers are joint tortfeasors; they are not. Instead, this court finds that the relationship between the Fryers and Cochran is analogous to that of a principal and his agent.

When dealing with *res judicata* in the principal-agent context, this court has all but done away with the privity requirement, choosing instead to focus on whether or not the plaintiff is attempting to relitigate an issue that has already been decided. In *Russell v. Nekoosa Papers, Inc.*, 261 Ark. 79-B, 547 S.W.2d 409 (1977), two men were killed in a car accident involving two employees of Nekoosa Papers, Inc. The administrators for the deceaseds brought a negligence action against the employees, resulting in a settlement agreement between the parties. The terms of the settlement released the employees from any litigation, but reserved the right to bring a claim against any other parties with potential liablity. *Russell*, 261 Ark. at 79-B, 79-C. Two years later, the administrators brought an action against Nekoosa based on *respondeat superior*. In dismissing the action, the *Russell* court articulated our approach regarding *res judicata* in cases involving an employer-employee relationship:

> We agree with the appellants that it is well settled that the relationship of an employer-employee is not privity for the purpose of the application of the doctrine of *res judicata*. Appellants, however, recognize that this court has in the past discussed terms as to "an extension of *res judicata*" to one not a party or privy to an action. Here appellants recognize that these cases are identified as "exceptions" to the privity requirement . . . since appellee's liability, if any, is derivative of their alleged negligence, the present action would be a relitigation of that issue and, consequently, the action is barred.

*Id.* at 79-C, 79-D (citations omitted). According to *Russell*, the privity requirement is not mandatory when an employer-employee relationship is involved.

Similarly, in *Barnett v. Isabell*, 282 Ark. 88, 666 S.W.2d 393 (1984), the plaintiff, Barnett, brought an action against Isabell, a motorist who had negligently caused an accident. Isabell moved for summary judgment after learning that Barnett had already brought a successful claim against the driver's employer based on *respondeat superior*. The trial court granted Isabell's motion based on *res judicata*. *Barnett*, 228 Ark. at 90.

On appeal, this court recognized the derivative nature of Barnett's claim and affirmed the lower court. In doing so, the *Barnett* court articulated the practical reasons behind their lenient approach to the privity requirement:

> The true reason for holding an issue *res judicata* is not necessarily for the identity or privity of the parties, but the policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy, and that a plaintiff who deliberately selects his forum is bound by an adverse judgment therein in a second suit involving the same issue.

*Barnett*, 282 Ark. at 89. *See also Ted Saum & Co. v. Swaffar*, 237 Ark. 971, 377 S.W.2d 606 (1964) (holding that an action by a third party against an agent was *res judicata* to a subsequent action brought by the same third party against the principal); *Davis v. Perryman*, 225 Ark. 963, 286 S.W.2d 844 (1956) (holding that an unsuccessful wrongful-death action against employer was *res judicata* to subsequent action against employee based on the same facts). Overall, this court has routinely found that a principal-agent relationship is sufficient to satisfy the privity requirement for purposes of *res judicata*.

We have not analyzed *res judicata* in specific regard to the attoney-client relationship; however, other states addressing this issue have found privity in the relationship. *See In re El San Juan Hotel Corp.*, 841 F.2d 6 (1st Cir. 1988) (holding that trustee's attorney was in privity with trustee, thus *res judicata* barred a subsequent action against attorney accused of facilitating a wrong-doing); *Geringer v. Union Elec. Co.*, 731 S.W.2d 859 (Mo. App. 1987) (holding that law firm which represented client in underlying action was in privity with client, thus law firm could assert collateral estoppel as a bar to relitigation of issue resolved in previous lawsuit); *Chaara v. Lander*, 132 N.M. 175, 45 P.3d 895 (Ct. App. 2002) (holding that wife's divorce attorney was in

privity with wife, thus *res judicata* barred husband's subsequent suit against attorney); *Simpson v. Chicago Pneumatic Tool Co.*, 693 N.W.2d 612 (N.D. 2005) (holding that tool company's attorney was in privity with tool company for purposes of *res judicata*).

■ Given the combination of precedent, policy, and practicalities, we conclude that the attorney-client relationship between the Fryers and Cochran is sufficient to satisfy the privity requirement for purposes of *res judicata*. For this reason, Jayel's claim against Cochran is barred by the doctrine of *res judicata*. Consequently, the trial court's decision to grant summary judgment is affirmed.

■■ Jayel's second and third points on appeal contend that the trial court erred in dismissing its remaining causes of action against Cochran pursuant to Ark. R. Civ. P. 12(b)(6). This court need not reach the merits of Jayel's arguments because these claims, like the abuse-of-process claim, are barred by *res judicata*.[2] Likewise, Cochran's counterclaim challenging the trial court's partial denial of Cochran's motion to dismiss is moot.

Affirmed.

IMBER, J., not participating.

---

[2] We recognize the fact that Jayel brought a statutory claim under Ark. Code Ann. § 5-37-226 (Repl. 2006), against Cochran, but failed to raise this claim in the Fryer litigation. Regardless, this claim is still barred by *res judicata*. Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *See Swofford v. Stafford*, 295 Ark. 433, 748 S.W.2d 660 (1988).