# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3080

_____

Sparkman Learning Center; Jessie Carter

*Plaintiffs - Appellants*

v.

Arkansas Department of Human Services; John Selig, Individually and in his official capacity as Director, AR DHS; Tonya Russell, Individually and in her official capacity as Director of Division of Child Care and Early Childhood Education AR DHS other Director, Division of Child Care and Early Childhood Education of AR DHS

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: September 11, 2014
Filed: December 30, 2014

_____

Before RILEY, Chief Judge, SMITH and KELLY, Circuit Judges.

_____

SMITH, Circuit Judge.

Sparkman Learning Center and its executive director, Jessie Carter, (referred to collectively as "Sparkman") appeal the district court's[1] denial of their preliminary injunction, denial of their post-judgment motions to alter or amend a judgment, and granting of the Arkansas Department of Human Services's (DHS) motion to dismiss Sparkman's claims that DHS violated their due process and equal protection rights under the Fourteenth Amendment of the United States Constitution. The district court barred Sparkman's claims based on principles of claim preclusion within Arkansas law because the claims could have been brought during the state administrative proceeding and judicial review. We affirm.

## I. *Background*

DHS is a state agency whose Division of Child Care and Early Childhood Education ("Division") regulates child care facility licensing; the Division also administers the USDA Child Care Food Program ("Program"), which is funded by the federal government. Appellee John Selig is the director of DHS, and appellee Tonya Russell is the director of the Division (referred to collectively as "DHS"). Sparkman Learning Center is a day care facility that provided disability services funded by DHS and took part in the Program that DHS facilitated. A federal regulation for the Program prohibits enrolled providers from placing disqualified individuals in a position of authority. *See* 7 C.F.R. § 226.6(c)(3)(ii)(B). Additionally, DHS Policy 1088 states that violations of the Program's regulations can result in the exclusion of the provider from receiving further funding from DHS.

In 2005, DHS notified Sparkman of their intent to exclude Sparkman from further DHS funding and activities due to Sparkman's alleged placement of a disqualified individual, Patricia Whitaker, in a position of authority. Sparkman appealed this decision and was given a hearing before a DHS administrative law

---

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

judge (ALJ) pursuant to the Arkansas Administrative Procedures Act. *See* Ark. Code Ann. §§ 25-15-201–25-15-219. Sparkman believed that racial animus motivated DHS to place Whitaker on the disqualification list. Nonetheless, Sparkman did not raise any constitutional equal protection claim at this first administrative hearing. Because the ALJ presiding over the case was relatively new, a more experienced ALJ observed portions of the hearing. In a curious turn of events, before the hearing process was complete, the ALJ presiding over Sparkman's hearing resigned, stating "as an African American male I cannot continue to work in a[n] office where racism and harassment continue to exist on a daily basis." After the initial ALJ resigned, the other ALJ present, who was Caucasian, decided the case. The second ALJ's decision upheld DHS's termination of funding for Sparkman. Sparkman appealed this decision to the Pulaski County Circuit Court and subsequently to the Arkansas Court of Appeals. Sparkman alleged that the irregularity of having two ALJs involved in the administrative hearing violated their due process rights. Sparkman also alleged for the first time that racial animus on the part of the Caucasian ALJ affected the outcome of the case.

In December 2006, with state proceedings underway, Sparkman also filed a complaint in the Western District of Arkansas alleging violations of their due process and equal protection rights under the Fourteenth Amendment of the United States Constitution. The district court declined to hear the case while the state court appeals were pending pursuant to the *Younger*[2] abstention doctrine.

Meanwhile, the Arkansas state courts, upon DHS's motion, remanded the administrative hearing appeal back to the hearing level to conduct a second hearing. For the second hearing, DHS appointed a private attorney to serve as the administrative hearing officer; Sparkman agreed to the selection. In the second administrative hearing, Sparkman again made no claims regarding equal protection

---

[2]*Younger v. Harris*, 401 U.S. 37 (1971).

violations resulting from DHS's racial animus, nor did Sparkman bring any claims regarding their due process complaint arising from the first administrative hearing. Following the second hearing, the hearing officer decided in DHS's favor, upholding DHS's decision to terminate funding for Sparkman. As before, Sparkman appealed to the Pulaski County Circuit Court, this time alleging that there were *ex parte* communications between DHS and the hearing officer which violated Sparkman's due process rights under the Fourteenth Amendment. The state circuit court upheld the decision of the hearing officer, finding that the use of a private attorney as a substitute ALJ in the second administrative hearing did not deprive Sparkman of due process. Sparkman appealed to the Arkansas Court of Appeals. The state appellate court affirmed. It held that the second hearing procedure did not violate Sparkman's due process rights. *See Sparkman Learning Ctr., Inc. v. Ark. Dep't of Human Servs.*, No. CA 11–792, 2012 WL 723330, at *3–4 (Ark. Ct. App. March 7, 2012). Sparkman did not appeal to the Arkansas Supreme Court.

With the state court proceedings ended, at Sparkman's request, the Western District of Arkansas reopened the federal case originally filed in 2006 but stayed in 2007. Initially, Sparkman filed a motion for a preliminary injunction. The district court denied relief after concluding that Sparkman lacked a reasonable probability of prevailing on the merits. In doing so the court noted: that (1) "the state courts of appeal properly exercised jurisdiction over Sparkman's due process claim"; (2) both the federal and state suits "allege that Sparkman was deprived of due process"; (3) both suits involve the same two parties; (4) "Sparkman appears to have fully contested the claims that they chose to pursue in the administrative proceeding, including their due process claims"; and (5) the state courts "fully addressed [Sparkman's] arguments on appeal and found no reason for reversal on due process grounds." The district court's analysis concluded that Arkansas claim preclusion law barred Sparkman's due process claim. The court made the same conclusion for Sparkman's equal protection claim because Sparkman failed to bring the claim in the state court proceeding, noting that "[u]nder Arkansas law, claim preclusion applies

not only to claims that were *actually* litigated, but also to claims that *could* have been litigated." (Citing *Beebe v. Fountain Lake Sch. Dist.*, 231 S.W.3d 628, 635 (Ark 2006)). A few months later, the district court granted DHS's motion to dismiss, concluding that claim preclusion barred Sparkman from bringing their constitutional claims. Sparkman moved to alter or amend the dismissal order,[3] but the district court denied the motion. The court determined that Sparkman made no showing of a manifest error of law or fact and no showing that a manifest injustice to Sparkman would occur. Sparkman appeals raising three issues: (1) the district court's denial of their preliminary injunction, (2) the district court's grant of DHS's motion to dismiss, and (3) the district court's denial of their Rule 52 and Rule 59 motions.

## II. *Discussion*
### A. *Denial of the Motion for a Preliminary Injunction and Granting of the Motion to Dismiss*

"We review the denial of preliminary injunctive relief for an abuse of discretion." *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1000 (8th Cir. 2012) (citation omitted). A district court abuses its discretion if it "base[s] its decision on an erroneous legal premise. We review the district court's legal conclusions *de novo*." *Id.* (citing *FTC v. Freeman Hosp.*, 69 F.3d 260, 267 (8th Cir. 1995); *Grand River Enters. Six Nations, Ltd. v. Beebe*, 467 F.3d 698, 701 (8th Cir. 2006)). Additionally, "[w]e review a district court's grant of a motion to dismiss for failure to state a claim de novo, taking all facts alleged in the

---

[3]Sparkman originally filed "Plaintiffs' Motion for Additional Findings of Fact and Conclusions of Law" and "Plaintiffs' Motion for a New Trial" pursuant to Rules 52 and 59 of the Federal Rules of Civil Procedure, respectively. The district court correctly reframed these motions as a motion to alter or amend a judgment under Rule 59(e) and appropriately ruled on the motions pursuant to that understanding. On appeal, Sparkman does not contest the district court's treatment of their filings as motions to alter or amend a judgment.

complaint as true." *Gilmore v. Cnty. of Douglas, State of Neb.*, 406 F.3d 935, 937 (8th Cir. 2005) (citation omitted).

District courts must consider the following factors when considering preliminary injunctions: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Sparkman argues on appeal that the district court erred in concluding that Sparkman failed to show a probability that they would succeed on the merits.

Because the district court denied Sparkman's motion for a preliminary injunction and granted DHS's motion to dismiss using the same legal reasoning and case law, we address the issues together. We review both issues de novo.

## 1. *Due Process*

Federal courts are required to respect the decisions of state courts. According to 28 U.S.C. § 1738, "[t]he records and judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." *Id.* Therefore, federal courts are limited to the extent we cannot give review to claims that have already been fully adjudicated in state court. If a state court would not hear the case because it was precluded by a previous holding in that state's courts, the federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) (footnote omitted). Federal courts do not provide a forum to relitigate claims previously decided adversely in state courts.

Our decision in *Knutson v. City of Fargo* controls. 600 F.3d 992 (8th Cir. 2012). In *Knutson*, we held that litigants could not bring claims before a federal court that were already fully decided by state courts in what would amount to appellate review of the state court ruling. *See id.* at 995–96 (citing *Kremer*, 456 U.S. at 466; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)).

Under 28 U.S.C. § 1738, we apply a state's law to decide whether claims previously decided in that state's courts, which are then brought in federal court, are precluded by the prior state court judgment. Arkansas law bars relitigation under claim preclusion when:

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies.

*Baptist Health v. Murphy*, 373 S.W.3d 269, 278 (Ark. 2010) (citing *Fountain Lake Sch. Dist.*, 231 S.W.3d at 635).

As to the first element, the Arkansas Court of Appeals issued a final judgment which decided the sole due process issue before the state court. *See Sparkman*, 2012 WL 723330, at *1–4. Both parties agree that when Sparkman chose not to appeal to the Arkansas Supreme Court, the final decision of the Court of Appeals became the final state court resolution of the case. The second element is not in dispute. Neither party contests, nor do we find, that the courts of Arkansas exercised their jurisdiction improperly. The Pulaski County Circuit Court had jurisdiction to hear the appeal from the second administrative hearing pursuant to § 25-15-212(b)(1)(B) of the Arkansas Code. From there, it is well settled that the Arkansas Court of Appeals has jurisdiction to review final judgments from the Pulaski County Circuit Court. *See* Ark. Sup. Ct. R. 1–2. We also find the third element is easily satisfied as well because

the state court action was contested by the parties in good faith and the state courts well considered the matter. *See Nat'l Bank of Commerce v. Dow Chem. Co.*, 1 S.W.3d 443, 448 (Ark. 1999) (considering the thoroughness of review by the courts as an indication that the case was contested in good faith).

Under the fourth element, "we must be able to determine the specific claims that were presented in both the federal court action and the state court action." *Carmical v. City of Beebe*, 871 S.W.2d 386, 388 (Ark. 1994) (citing *Ward v. Davis*, 765 S.W.2d 5 (Ark. 1989)). In the state action, Sparkman appealed from the second administrative hearing alleging that their due process rights under the Fourteenth Amendment of the United States Constitution were violated because there were *ex parte* communications between the hearing officer and DHS. In the federal action, Sparkman alleges this same due process complaint from the second hearing. Thus, the fourth element is satisfied.

As to the last element, "[p]rivity exists when two parties are so identified with one another that they represent the same legal right." *Crockett v. C.A.G. Invs., Inc.*, 381 S.W.3d 793, 799 (Ark. 2011). The Arkansas Supreme Court has "never required strict privity in the application of res judicata . . . ." *Id.* (citing *Wells v. Heath*, 602 S.W.2d 665 (Ark. 1980)); *see also Collum v. Hervey*, 3 S.W.2d 993 (Ark. 1928) (finding privity between a husband and wife); *Francis v. Francis*, 31 S.W.3d 841 (Ark. 2000) (finding privity between a brother and sister); *Hardie v. Estate of Davis,* 848 S.W.2d 417 (Ark. 1993) (finding privity between a testator and his remote heirs); *Phelps v. Justiss Oil Co.*, 726 S.W.2d 662 (Ark. 1987) (finding privity between a landlord and tenant); *S. Farm Bureau Cas. Ins. Co. v. Jackson,* 555 S.W.2d 4 (Ark. 1977) (finding privity between an insurer and its insured); *Curry v. Hanna*, 307 S.W.2d 77 (Ark. 1957) (finding privity between a bankrupt debtor and his trustee).

Here, Sparkman Learning Center and DHS return as parties from the state court to the federal court case; that said, Sparkman added Jesse Carter as a plaintiff, and

added John Selig and Tonya Russell as defendants. Applying Arkansas law, we conclude that Jesse Carter is in privity with Sparkman Learning Center as its executive director, and John Selig and Tonya Russell are likewise in privity with DHS and the Division, respectively. Therefore, the fifth element of claim preclusion is satisfied even with the addition of new parties.

Sparkman alleged the same due process violations in federal court that had already been adjudicated by the Arkansas courts. Consequently, we find no error in the district court's conclusion that Sparkman's due process claim is precluded.

### 2. *Equal Protection*

We again consider claim preclusion when addressing Sparkman's Fourteenth Amendment equal protection claim. Arkansas claim preclusion not only applies to claims that *were* litigated before a different court, but also to claims that *could have been* litigated. *Fountain Lake Sch. Dist.*, 231 S.W.3d at 635. Thus, the question we face is whether Sparkman had the opportunity to bring their equal protection claim in the state administrative and judicial proceedings.

Sparkman argues that they did not have a "full and fair opportunity" to litigate their equal protection claim in the second administrative hearing because the remand back to the administrative level was narrow and only contemplated a rehearing of the issues in the first administrative hearing. Further, Sparkman argues that discovery in an administrative hearing lacks the rigor permitted under state and federal court rules. This is true. Sparkman, however, does not dispute that they had opportunity to raise the claim in the first instance in the administrative process and state appeal.[4]

---

[4]If Sparkman had raised their equal protection claim at the first administrative hearing, these issues would have been preserved for consideration at the second administrative hearing and the subsequent state court appeal.

According to Arkansas law, Sparkman was required to raise their equal protection claim at the administrative level in order to preserve it on appeal to the state courts. Section 25-15-208 of the Arkansas Code states that "[o]pportunity shall be afforded all parties to respond and present evidence and argument on all issues involved." Under Arkansas law, litigants are barred from raising constitutional issues before state courts that were not first raised at the administrative level. *Hamilton v. Jeffrey Stone Co.*, 641 S.W.2d 723, 725 (Ark. Ct. App. 1982); *see also Ark. Health Servs. Agency v. Desiderata, Inc.*, 958 S.W.2d 7, 8 (Ark. 1998) (finding that because a party "did not raise its Equal Protection Clause argument until its appeal to the circuit court . . . under the *Hamilton* rule, it is barred from arguing that issue now."); *Ark. Bd. of Exam'rs in Counseling v. Carlson*, 976 S.W.2d 934, 941 (1998) (finding that a party's "failure to raise the due-process arguments before the Board [at the administrative hearing level] precludes its consideration by this court on appeal."). Based on the *Hamilton* rule, constitutional claims *can* be and *must* be raised at the administrative level to preserve such claims for appeal before the state courts. Sparkman's failure to do so is fatal for their equal protection claim and precludes both state and federal courts from reviewing this claim.

Sparkman also contends that the hearing officer at the second administrative hearing was led to believe that an agreement existed between the parties to defer the equal protection claim for the federal courts to decide. If such a "claim-splitting" agreement between the parties did exist, it is unenforceable.[5] It is well established that claim-splitting is discouraged. All claims must be brought together, and cannot be parsed out to be heard by different courts. *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2147 (2012) ("Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that

---

[5]We deny DHS's motion to supplement the record to address this point. As we explain, whether a claim-splitting agreement existed between the parties would not have any effect on our decision.

-10-

requirement as necessary to avoid duplicative litigation." (quotation and citations omitted)).

Sparkman's failure to bring their equal protection claim at the administrative level is fatal to their attempt to litigate the claim before the federal courts. Applying Arkansas law, Sparkman's claim for violation of equal protection is precluded because it could have been brought before the state courts if initially raised in the administrative process.

B. *Denial of the Post-Judgment Motions to Alter or Amend a Judgment*

Rule 59(e) of the Federal Rules of Civil Procedure provides a means for "correcting manifest errors of law or fact or to present newly discovered evidence" after a district court has handed down a judgment. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quotation and citations omitted). "'A district court has broad discretion in determining whether to grant a motion to alter or amend judgment, and this court will not reverse absent a clear abuse of discretion.'" *Christensen v. Qwest Pension Plan*, 462 F.3d 913, 920 (8th Cir. 2006) (quoting *Global Network Techs., Inc. v. Reg'l Airport Auth.*, 122 F.3d 661, 665 (8th Cir. 1997)). According to Sparkman, they brought their post-judgment motions before the district court to correct an important factual error and legal conclusion; namely, the district court's belief that Sparkman waived their right to present evidence related to the first administrative hearing when they agreed to participate in a second administrative hearing.

The district court, in its order denying relief, concluded that Sparkman had not actually identified any manifest errors of law or fact or provided new evidence. On appeal, Sparkman has not shown the required errors and we conclude that the district court's denial of post-judgment relief was not an abuse of discretion.

### III. *Conclusion*

For the reasons stated herein, we affirm.

_____