**Gary Lane McCLATCHY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. B14–87–659–CR, B14–87–599–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 11, 1988.

Stanley G. Schneider, Houston, for appellant.

John B. Holmes, Jr., Roe Morris, Houston, for appellee.

Before PAUL PRESSLER,
DRAUGHN and ELLIS, JJ.

OPINION

DRAUGHN, Justice.

Appellant waived his right to a jury trial, and was convicted by the court on two counts of aggravated assault of a police officer. The court assessed punishment at five years probation, and a two-hundred dollar fine. On appeal, he asserts the evidence was insufficient to support the courts determination that the complainants were police officers in the lawful discharge of their official duty. We affirm.

On the evening of November 1, 1986, Officer J.D. Dahlstrand of the Houston Police Department responded to call from the residence at 4282 Childress, in Houston. Upon arriving at the residence, Dahlstrand spoke with Brook McDonald. McDonald told him that earlier in the evening she had been assaulted by appellant, her sister's boyfriend. She had returned to the house from visiting her parents at approximately 6:45 p.m., and was surprised to discover appellant there. McDonald explained to Dahlstrand that appellant had been arrested for disorderly conduct and assault at the Rothko Chapel earlier in the day, and she had thought appellant was still in jail. McDonald told Dahlstrand that appellant was under the influence of drugs, and had been hostile and abusive. She had argued with appellant about his earlier arrest. As appellant advanced toward her, she became frightened and threatened to call police if he touched her. Appellant had backed her against the kitchen cupboard and shoved her. She told Dahlstrand she was frightened because appellant was red-faced and out of control. She said she told appellant several times to leave her alone or she would call the police. She lunged toward the phone between the kitchen and living room. She recounted to Dahlstrand that appellant had told her she was not going to call anyone, and they had struggled over the phone. McDonald told the officer appellant had tied her hands with the phone cord. Dahlstrand could see red marks and bruises on her wrists. She described how she had tried to escape through the front door, because she was very frightened that appellant would seriously harm her. Ap-

pellant had blocked her path, but she succeeded in running out the back door and driving to her parents' home.

McDonald told Dahlstrand she then had several telephone conversations with her sister, and told her sister if appellant did not leave the house she would call the police. When appellant refused to leave, McDonald telephoned the police for assistance. The dispatcher told her officers would arrive at her home momentarily, so she returned to the house.

When McDonald and Officer Dahlstrand arrived at the house, appellant was not there. After hearing McDonald's story, Dahlstrand called for backup.

Officer M.R. Prendergast was Dahlstrand's usual partner, and worked an off-duty job as a security guard at Rothko Chapel. Earlier, when the officers arrived at roll call for their three-to eleven shift for the Houston Police Department, Prendergast had told Dahlstrand he had had problems with a fellow resisting arrest at the chapel that morning. Dahlstrand occasionally filled-in for Prendergast and knew no one else had been arrested at the chapel during the three-years they had worked there. When McDonald mentioned appellant had been arrested at Rothko Chapel, Dahlstrand specifically requested Officer Prendergast answer his call for backup. Shortly thereafter, Prendergast and a probationary officer, R.D. Rodriguez, arrived at McDonald's residence. Prendergast recognized appellant's name and description as the person he had arrested at Rothko Chapel that morning.

Particularly in light of appellant's violent behavior at the chapel earlier in the day, the officers believed McDonald's fear of appellant was genuine, and that her concern he would return and harm her was justified. After some discussion, McDonald told the officers appellant worked at Allen Park Inn, and perhaps they could find him there. Since appellant did not appear to be in the area, the officers left McDonald's residence. The officers were immediately dispatched to two intervening calls, but sometime after 9:00 p.m. proceed-

ed to the Allen Park Inn to look for appellant.

After locating appellant's car in the parking lot and verifying he had checked into a room, the officers contacted the Intake Division of the Harris County District Attorney's Office. They were told the D.A.'s office would accept assault charges on appellant.

While Rodriguez watched the room's rear window, officers Dahlstrand and Prendergast knocked at appellant's door. The officers were wearing their uniforms and their badges were displayed on their chests. When appellant opened the door, they identified themselves and told him he was under arrest for assault. Appellant shoved the officers and tried to close the door. Appellant began fighting the officers and trying to grab Dahlstrand's gun. The officers were unable to subdue appellant in the ensuing scuffle. Prendergast yelled to Rodriguez to call for backup, and to come to their aid. Eventually, as the backup units arrived, the three officers were able to handcuff appellant.

■ In his sole point of error, appellant contends that, since the officers did not obtain a warrant, the arrest was unlawful. Therefore, appellant argues, the officers were not "lawfully discharging an official duty", an essential requirement of Tex.Penal Code Ann. § 22.02 (Vernon Supp.1988).

When faced with a challenge to the sufficiency of the evidence, we must view the evidence in the light most favorable to the judgment. *Flournoy v. State*, 668 S.W.2d 380 (Tex.Crim.App.1984). Tex.Code Crim. Proc.Ann. art. 14.03(a)(2) (Vernon Supp. 1988), authorizes the warrantless arrest of "persons who the peace officer has probable cause to believe have committed an assault resulting in bodily injury to another person and the peace officer has probable cause to believe that there is danger of further bodily injury to that person." The record reflects Brook McDonald repeatedly told the officers she feared appellant would return to harm her. She told them she had seen appellant under the influence of drugs on other occasions, and she believed he was under the influence on that evening. She

told them he was aggressive, wild-eyed and out of control. The officers saw red marks and bruises on her wrists. Officer Prendergast testified he had encountered appellant earlier in the day at Rothko Chapel, and had found appellant to be violent, and exhibiting extraordinary strength that he believed was the result of drug intoxication. Appellant argues that, since the officers answered other calls before proceeding to Allen Park Inn, they could not have believed McDonald was in further danger. We do not accept appellant's reasoning. The officers, who were in separate vehicles, were dispatched to two different calls after leaving McDonald's residence, but proceeded to Allen Park Inn immediately after answering those calls. The police department dispatcher functions much the same as the triage desk in a hospital emergency room. We cannot agree that, simply because the officers were ordered to some intervening emergency, they did not have a genuine concern for McDonald's safety. Based on the evidence of the officers' own knowledge of and experience with appellant, and the information provided by McDonald, the officers had sufficient facts on which to base a belief that appellant might return to harm McDonald. Under these circumstances, they were authorized, under art. 14.03(a)(2), to arrest appellant without a warrant.

■ Assuming *arguendo* the arrest was illegal, the Texas Court of Criminal Appeals has held the contention they were not acting in the lawful discharge of their official duty is without merit. *Craig v. State*, 594 S.W.2d 91, 94 (Tex.Crim.App.1980). The Court of Criminal Appeals noted in *Craig* the use of force to resist arrest is not justified even though the arrest is illegal. *See* Tex.Penal Code Ann. § 9.31(b)(2) (Vernon 1974). We think that ruling is a sound one. Were the courts to hold that a person may not be prosecuted for physically attacking an arresting officer when the calm analysis of hindsight reveals the officer's judgment of probable cause was faulty, we would be effectively declaring open season on arresting officers. The courts of Texas wisely decline to do so.

Accordingly, appellant's sole point of error is overruled. The judgment of the trial court is affirmed.