**Affirmed and Memorandum Opinion filed August 25, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00391-CR
## NO. 14-14-00392-CR

### HOWARD  MARTIN  HARRIS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 14CR0154 &12CR1863**

## M E M O R A N D U M   O P I N I O N

Appellant Howard Martin Harris appeals his convictions for aggravated sexual assault and aggravated kidnapping, challenging the trial court's order denying his motion to suppress a videotaped statement used by the State at his trial. Appellant claims that the statement was obtained as a result of an illegal warrantless arrest and thus should have been suppressed. *See Reed v. State*, 809

S.W.2d 940, 944 (Tex. App.—Dallas 1991, no pet.) (stating that the use of evidence obtained through an illegal arrest is forbidden). We hold the trial court did not err in denying the motion to suppress because the warrantless arrest of appellant was not illegal given the officer's belief that an assault had occurred and genuine concern for the complainant's safety. *See McClatchy v. State,* 758 S.W.2d 328, 330 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). We therefore affirm the judgments of the trial court.

## BACKGROUND

According to testimony at the evidentiary hearing on appellant's motion to suppress, the complainant went to clean appellant's home on the night of July 11, 2012. When the complainant arrived, appellant threw her on the bed and began striking her repeatedly with his belt and fists. Appellant cut off the complainant's bra with a hunting knife. Appellant then pulled off the complainant's pants and forced her to spread her legs. Appellant threatened her and stated that the police would find her in a ditch if she did not comply. Appellant then penetrated the complainant's vagina with his fingers, causing her extreme pain.

Eventually, appellant set the hunting knife down and the complainant picked it up. Wielding the knife, the complainant successfully escaped the house and made her way to her truck that was parked outside. Appellant followed her outside and stated that if she did not give him his knife back, he would come through the truck window. The complainant threw down the knife and drove directly to a nearby police station.

When she arrived, the complainant spoke with Deputies Hunt and Ostermayer of the Galveston County Sheriff's Office. The deputies observed that the complainant was distraught and had marks all over her body that she claimed were the result of appellant's beatings. The complainant told Hunt what happened

to her and stated that her friend, appellant, was responsible for her injuries. Hunt communicated this information to his supervisor, Sergeant Brent Cooley. At this point, both Hunt and Cooley believed that they had probable cause to arrest appellant for assault.

Cooley and Corporal Keele, another officer on duty, travelled to appellant's home and knocked on his door. Cooley testified that he called Corporal Keele to assist him in the interest of officer safety based on the complainant's allegation that appellant had used a weapon in assaulting her. Appellant answered the door, and Cooley and Keele explained why they were there. Keele testified that he handcuffed appellant for investigative detention. He and Cooley then asked appellant if they could speak in his home because it was hot and there were mosquitoes outside. Appellant allowed the officers inside.

Keele read appellant his *Miranda* rights.[1] Cooley then asked if appellant would be willing to speak with them regarding the allegations made against him by the complainant. Appellant affirmed that he understood his rights and then gave oral consent to speak with the officers and written consent for the officers to search his home and vehicle for the hunting knife described by the complainant. The officers were unable to locate the hunting knife the complainant alleged appellant had used in the assault.

At the conclusion of the search, Cooley called the assistant district attorney on duty for guidance on the case. The assistant district attorney confirmed Cooley's suspicions that probable cause existed to arrest appellant for assault causing bodily injury. The officers then arrested appellant for assault causing bodily injury. The officers had not obtained an arrest warrant prior to placing appellant under arrest. The officers brought appellant back to the sheriff's station,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

where Detective Balchunas interviewed him. The entire interview was videotaped.

Appellant filed a pre-trial motion to suppress his statement to Detective Balchunas, alleging it was the fruit of an illegal arrest. At this hearing, Cooley, Hunt, and Keele each testified that they believed that there was a threat of future harm to the complainant. The trial court ruled that appellant's warrantless arrest was legal and denied the motion to suppress the statement. The trial court articulated the following reason:

> The thing that is persuasive to the court is that there was a threat. You're going to end up in the ditch, words to the effect [sic], if you go to the police, or whatever. Well, she's at the police. There was a knife used. How she got away, whether she had a knife to use to get away is -- there some testimony of that, but there is physical damage on the victim. There is [sic] pictures of a bra that has been raggedly severed, and I believe that the police could and should take into consideration the future threat to the victim.

The trial court later signed findings of fact and conclusions of law.

Appellant pled not guilty and went to trial on both charges. Appellant's video statement was played for the jury during the trial. After the video was played, appellant decided to accept a plea agreement. He pled guilty to both aggravated sexual assault and aggravated kidnapping and pled true to a deadly weapon enhancement to the latter charge. The trial court accepted the plea, admonished appellant, and sentenced him to twenty years' imprisonment on each count with the sentences to run concurrently in accordance with the plea agreement.

Appellant filed motions for new trial in both cases, which the trial court denied. These appeals followed.

ANALYSIS

In a single issue in each appeal, appellant contends the trial court abused its discretion when it denied his motion to suppress because his video statement was obtained through an illegal warrantless arrest. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2015).

## I. Standard of review and applicable law

We review the trial court's ruling on a motion to suppress under a bifurcated standard. *Douds v. State,* 434 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (en banc). We afford almost total deference to the trial court's determinations of historical facts that the record supports, especially those based on an evaluation of credibility and demeanor. *State v. Elias,* 339 S.W.3d 667, 673 (Tex. Crim. App. 2011). We afford the same amount of deference to the trial court's rulings on mixed questions of law and fact when the resolution of those ultimate questions turns on evaluations of credibility and demeanor. *Id.* When those rulings do not turn on credibility and demeanor evaluations, we review them de novo. *Id.* We will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

## II. The trial court did not err in denying appellant's motion to suppress.

### A. A danger of further bodily injury authorizes a warrantless arrest.

> [A]ll arrests and searches without valid warrants are unreasonable unless shown to be within one of the exceptions to the rule that an arrest or a search must rest upon a valid warrant. A valid exception must exist and the burden is on the State to show that a warrantless arrest or search comes within some exception to the above general rule of exclusion.

*Wilson v. State*, 621 S.W.2d 799, 803-04 (Tex. Crim. App. [Panel Op.] 1981).

Such an exception exists in this case. In Texas, warrantless arrests are authorized in limited situations primarily set out in the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. arts. 14.01–14.03 (West 2015); *Swain v. State,* 181 S.W.3d 359, 366 (Tex. Crim. App. 2005). Article 14.03(a)(2) provides that a police officer may arrest a person without a warrant if the officer has probable cause to believe: that the person committed an assault resulting in bodily injury, and that there is danger of further bodily injury to the victim. Tex. Code Crim. Proc. Ann. art. 14.03(a)(2).

Appellant contends that it is also settled law that a warrantless arrest violates the Fourth Amendment when there is no showing that seeking a warrant would have been impracticable. The risk of future harm to the victim, however, is itself an impracticable circumstance that legitimizes an otherwise-illegal warrantless arrest. *Randolph v. State*, 152 S.W.3d 764, 771–73 (Tex. App.—Dallas 2004, no pet.) (concluding exigent circumstances include risk of danger to victim).[2]

In sum, under the Fourth Amendment and Texas law, a warrantless arrest is not illegal when the arresting officers have probable cause to believe that an assault causing bodily injury occurred and that there is a danger of further bodily injury. It is uncontested that the arresting deputies had probable cause to believe that appellant had committed an assault causing bodily injury. Thus, whether appellant's arrest was illegal (and his resulting statement should be suppressed) hinges on whether the arresting officers had probable cause at the time of the arrest to believe that there was a danger of further bodily injury to the victim.

---

[2] We do not address whether the arrest occurred in a constitutionally protected area because appellant has not argued, either in the trial court or this court, that the arrest was illegal for that reason. In any event, there is some evidence that appellant was handcuffed for officer safety and that appellant consented to the deputies entering his home before he was arrested.

6

**B.** **The record supports the trial court's findings and its conclusion that the officers had probable cause to believe there was a danger of further bodily injury.**

The trial court made findings of fact that the deputies were concerned for further violence to the complainant due to: the nature of the assault and the injuries she suffered; appellant's alleged use of a weapon in the assault and to threaten the complainant; appellant's relationship with the complainant and his act of following the complainant to her truck, which could allow him to locate the complainant in the future; and defendant's departure from the apartment shortly after the complainant fled, which supported a reasonable inference that he was looking for the complainant. Based on these facts, the trial court concluded that the deputies had probable cause to believe that there was a danger of further bodily injury to the complainant.

The trial court's factual findings are supported by the evidence from the hearing on appellant's motion to suppress, which is summarized in the background section above. In addition, the record reflects that Cooley, Hunt, and Keele each testified that they had strong concerns about a threat of future harm to the complainant. We conclude that, when viewed under the appropriate standard of review, the evidence from the suppression hearing supports the trial court's conclusion that the deputies had probable cause to believe that there was a danger of further bodily injury to the complainant. *See McClatchy*, 758 S.W.2d at 330 (concluding that although suspect was no longer in same location as victim, officers had sufficient facts on which to base belief that suspect might return to harm victim). We therefore hold that the trial court did not err when it denied appellant's motion to suppress, and we overrule appellant's single issue in each appeal.

**CONCLUSION**

Having overruled appellant's issues on appeal, we affirm the trial court's judgments.

/s/    J. Brett Busby
        Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).